THE HOWARD SAVINGS INSTITUTION, PROSECUTOR, v. THE MAYOR, &c., OF NEWARK AND ANDREW G. VOGHT, RECEIVER, &c.

Argued November 1, 1898—Decided February 27, 1899.

1. Neither the marginal note to a section of a statute nor the punctuation therein forms any part of the statute itself. Courts will in the construction of statutes, for the purpose of arriving at the intention of the lawmaker, disregard punctuation or re-punctuate, if need be, to reach the real meaning of the statute.

2. The primary rule for the construction of tax laws is that in taxation from year to year each act of taxation is a separate and distinct act, appealing to the law in force when the tax is laid as applied to property taxable at that time.

3. The General Tax act of 1866 (*Pamph L., pp* 1078, 1085), re-enacted in May, 1894 (*Pamph. L., p.* 354), with some changes not material to this case, enacted that all real and personal estate within this state should be liable to taxation at the full and actual value thereof on the day in each year when the assessment was made, &c. By section 4 it was provided that the term "personal estate" should be construed to include goods and chattels of every description. By section 15 of the act of 1866 a corporation having no capital stock was made liable to an assessment for taxation on its propery and valuable assets. By an act of congress, February 25th, 1862, it was enacted that all stock, bonds and other securities of the United States held by individuals, corporations or associations within the United States "shall be exempt from taxation by or under state authority." The act of the legislature of

1861, which provided for borrowing money on the credit of the state, provided for bonds of the state not exceeding one hundred thousand dollars, and enacted that all bonds authorized by the act should be "exempt from taxation." *Pamph. L., p.* 554. Section 5 of Tax law of 1866 provides for exemption from taxation, and among the property declared exempt was the property and the bonds and other securities of the United States, and the bonds and securities of this state which are by law "exempt from taxation." By an act of congress passed August 13th, 1894, it was enacted that "United States legal tender notes and other notes and certificates of the United States payable on demand and circulating or intended to circulate as currency and gold, silver or other coin, shall be subject to taxation as money on hand or on deposit under the laws of any state or territory:" *Held*—(1) That securities of the United States were comprised within the words "property and valuable assets" in section 15 of the act of 1866, as property liable to taxation. (2) That at the time the General Tax act of 1866 was enacted two classes of securities were by law exempt from taxation; viz., securities of the United States and bonds issued by this state. In section 5, in declaring the property exempt from taxation, the conjunction of United States securities and state bonds followed by the words "which are by law exempt from taxation," is descriptive of both classes of securities. (3) That in section 5 the legislative purpose was to divide property for exemption into two classes : First, a class which comprised federal and state securities which were exempted for the reason that they were by law (and not by force of that provision) not subject to taxation, and, second, other property, such as that of counties, &c., which the state from reasons of public policy abstained from subjecting to taxation. (4) That in the assessment of taxes for the year 1898 United States legal tender notes and other securities mentioned in the act of 1894 were liable at that time to state taxation—the act of congress having removed such securities from property not taxable by the states such securities are within the words "property and valuable assets" in section 15, and are liable to taxation as such.

4. The descriptive words of United States securities "which are by law exempt from taxation" in the statute relate to an exemption from taxation which is in force when the particular assessment is made. To give section 5 of the Tax law a relation to the condition of things in that respect that existed when the act was passed would require the insertion into the body of the act of the word "now," and make this section apply to property exempt from taxation when the act was passed, excluding property of the same class and description which would be taxable under the general law in subsequent assessments—a construction which would render the act special and unconstitutional.

On *certiorari.*

This writ brings up an assessment of taxes for the year 1898 assessed by the city of Newark against the Howard Savings Institution. The Howard Savings Institution is a savings bank in the city of Newark, incorporated in 1857 by a special act. *Pamph. L., p.* 219. It has no capital stock. Among its assets on the day fixed by law for levying the assessment of taxes in the city of Newark, it owned and held in its possession as a part of its current funds United States notes, commonly called greenbacks, United States treasury notes and United States gold and silver certificates, to the amount of $76,559 ; said notes and certificates were in various amounts and had been received by said institution previous to said date, from time to time, in the ordinary course of business from depositors and from the investment of its funds, and were then held by said institution to meet the demand of its depositors in the ordinary course of business. The said notes and certificates were payable on demand and were circulated and intended to circulate as currency. It is admitted that the said property and securities were not purchased or obtained by the institution with intent to avoid or escape taxation, but in good faith.

For the prosecutor, *John O. H. Pitney.*

*Contra, Frederick T. Johnson.*

Before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

The opinion of the court was delivered by

DEPUE, J. The only question presented on the record in this case is whether the taxation on the United States notes and certificates mentioned in the state of the case was legal. February 25th, 1862, congress enacted that " all stock, bonds and other securities of the United States held by individuals, corporations or associations within the United States shall be exempt from taxation by or under state authority." 12

*Stat. at L.* 346. The General Tax act of 1866 enacted that all real and personal estate within this state, whether owned by individuals or corporations, should be liable to taxation at the full and actual value thereof on the day in each year when by law the assessment was to commence, at such rate per dollar as would be with the poll tax sufficient to produce the sum required to be raised by taxation for public purposes. The third section defined real estate. By the fourth section it was provided that the term "personal estate" as used in the act should be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, whether on contract, note, bond, mortgage or book account, public stocks and stocks in corporations, whether said personal estate be within or without this state. Section 5 enacted "That the following persons and property shall be exempt from taxation, viz. : I. The property and the bonds and other securities of the United States, and the bonds and securities of this state, which are by law exempt from taxation, the property of the counties, townships, cities and boroughs of this state, &c. II. All colleges, academies or seminaries of learning, public libraries, school-houses, buildings erected and used for religious worship," &c.

Section 15 enacted " That all private corporations of this state, except banking institutions, and except those which by virtue of any contract in their charters or other contracts with this state are expressly exempted from taxation, and except mutual life insurance companies specially taxed, shall be and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in, and accumulated surplus ; * * * and such corporations as have no capital stock other than those above excepted, shall be assessed for the full amount of their property and valuable assets, without any deduction for debts and liabilities." *Pamph. L.* 1866, *pp.* 1078, 1085.

An amendment to the act of 1866 was passed May 19th, 1894. *Pamph. L., p.* 354. The act of 1894 is, therefore,

the act that was in force when this assessment was made; but section 5 of the former act was re-enacted, with some changes not material to this case.

The prosecutor is taxable pursuant to section 15 of the act referred to on the full amount of its property and valuable assets, in which would be included the assets now in controversy. *State, Township of Bridgewater* v. *Amerman, Collector,* 8 *Vroom* 408. The contention is with respect to the right to include among the property and assets of the bank for taxation and valuation as part of its taxable property, pursuant to section 15, United States notes and gold and silver certificates. The exclusion of such property from taxable valuations under section 15 depends upon the construction and effect of section 5 of the act of 1866 as re-enacted by the act of 1894. The contention of the counsel of the prosecutor is that in virtue of that section United States securities were exempted from taxation without regard to the question as to the power of the state to tax such securities. To sustain his contention the act of 1894 is read as if it were the legislative purpose to grant absolute exemption from taxation on United States securities and a limited exemption on the securities of this state; viz., restricted to such securities as the state could not tax. The argument rests mainly on the punctuation that appears in the act as printed in the public laws, with a comma after "United States," and rejecting the comma that follows the word "state."

Neither the marginal note to a section of a statute nor the punctuation therein in a copy printed by the queen's printer forms any part of the statute itself, and is not binding as an explanation or construction of the section. *Maxw. Int. Stat.* 35; *Claydon* v. *Green, L. R.,* 3 *C. P.* 511, 519, 522; *Barr. Ob. Stat.* 304. In *Ewing* v. *Burnet,* 11 *Pet.* 41, the court said: "Punctuation is the most fallible standard by which to interpret a writing. It may be resorted to when all other means fail; but the court will first take the instrument by the four corners, in order to ascertain its true meaning. If that is apparent on judicially inspecting it, the punctuation

will not be suffered to change it." In the schedule contained
in the act of June 30th, 1864, to provide internal revenue for
the support of government, as printed in the statute-books,
the language is: "any memorandum, check, receipt, or other
written or printed evidence of an amount of money to be paid
on demand," &c. The court rejected the comma between
"memorandum" and "check" and inserted in its place a
hyphen, so that the first two words were read "memorandum-
check." *United States* v. *Ishman,* 17 *Wall.* 496. In Ham-
mock *v.* Loan and Trust Co. the statute to be construed was
an act that conferred upon the judges of the court power in
vacation, as printed, "to hear and determine motions, to dis-
solve injunctions, stay or quash executions," &c. The ques-
tion under consideration was whether the court had power in
vacation to appoint a receiver of a corporation. The power
of the judge to exercise such a judicial function in vacation
depended upon the comma between the words "to hear and
determine motions" and the words "to dissolve injunctions."
The court held that punctuation was no part of the statute,
and put a construction upon the act upon an intention on the
part of the legislature derived from other considerations.
The opinion was by Mr. Justice Harlan. In passing upon
this question the learned judge used this language: "In the
argument before us atttention was called to the fact that
between the words in section 49, 'to hear and determine
motions,' and the words 'to dissolve injunctions,' there appears
a comma; and that was, to some extent, relied on as showing
that a judge in vacation could hear and determine motions of
every kind, not simply those relating to matters specially de-
fined in that section. While the comma after the word
'motions,' if any force be attached to it, would give the section
a broader scope than it would otherwise have, that circum-
stance should not have a controlling influence. Punctuation
is no part of the statute. Lord Chief Justice Kenyon, in *Doe*
v. *Martin,* 4 *T. R.* 65, said that courts in construing acts of
parliament or deeds should read them with such stops as will
give effect to the whole. *Sedgw. Constr. Stat. & Const. L.*

(2*d ed.*) 233, *note a; Bouv. L. Dict.* 347, 402. The general rule is well illustrated in *Barr. Ob. Stat.* (4*th ed.*) 438, *note x; Price* v. *Price,* 10 *Ohio St.* 316; *Cushing, &c.,* v. *Worrick,* 9 *Gray* 382; *Gyger's Estate,* 65 *Pa. St.* 311; and *Hamilton* v. *Steamer R. B. Hamilton,* 16 *Ohio St.* 428. In the last case it was said : ' But for the punctuation, as it stands, there could be little doubt but that this was the meaning of the legislature. Courts will, however, in the construction of statutes, for the purpose of arriving at the real meaning and intention of the lawmakers, disregard punctuation, or re-punctuate, if need be, to render the true meaning of the statute.' Apart from the general rule upon this subject, there are reasons why the punctuation of section 49 should not control its interpretation. It will be observed that at the close of that section·is a reference to the laws of Illinois passed at the session 1871–72 of the general assembly, indicating that section 49 was, in part at least, founded upon an existing or previous statute. One of the rules prescribed by the revision of 1874 for the construction of statutes is that ' the provisions of any statute, so far as. they are the same as those of any previous statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.' *Rev. Stat. Ill.,* 1874, *p.* 1012, § 2. Turning then to the previous law—the act of March 7th, 1872—we find no comma after the word ' motions,' but the statute reads, ' to hear and determine motions to dissolve injunctions,' &c. *Sess. L. Ill.,* 1871–72, *p.* 504. We are not prepared to hold that the power of a judge in vacation to appoint a receiver of a corporation, charged with important public duties, was conferred by the introduction of a comma into the revised statutes of a state, where the establishe doctrine is that no judicial functions can be exercised by a judge, in vacation, except where expressly or specially authorized by statute." 105 *U. S.* 77, 85. Other precedents to the same effect will be found in these citations: *Cushing* v. *Worrick,* 9 *Gray* 382, 385; *Hamilton* v. *Steamer R. B. Hamilton,* 16 *Ohio St.* 429; *Albright* v. *Payne,* 43 *Id.* 8. Rejecting the punctuation as not controlling, if an intent is discovered in

the statute which would require the comma after the words "securities of the United States" in section 5 to be discarded, an examination of the Tax laws that preceded the act of 1866 will be useful on that subject.

February 25th, 1862, an act of congress was passed providing that "All stock, bonds and other securities of the United States held by individuals, corporations or associations within the United States shall be exempt from taxation by or under state authority." 12 *U. S. Stat. at L.* 346. The language "bonds and other securities of the United States" in the federal statute is identical with the language "bonds and other securities of the United States" in section 5 of the Tax act of this state of 1866.

·The act of March 28th, 1862, which was a supplement to an act concerning taxation, introduced into our. system of taxation extensive and radical alterations designed for the more equal distribution upon persons and property of the increased burden of taxation rendered necessary by the war for the preservation of the Union. The purpose of that act was to ·diminish the number of non-taxable items, and in some instances to change the mode of assessing so as to reach the subjects of taxation with more certainty than before. The purpose of the legislature in that act is disclosed by the fact that it allowed no exemption of bonds issued by the state under the act of 1861, which exempted such bonds from taxation. *Pamph. L., p.* 554. Nor did it exempt from taxation the evidences of· debt issued by the United States. Whatever the intention of the legislature in fact was, the result of the sweeping provisions of the act of 1862 was to induce the taxation by local assessors of state bonds, which were expressly exempt from taxation, and securities issued by the United States government, as part of the personal property by that act made the subject of taxation. ¯*Id.* 1862, *p.* 344. Then followed the decision of the Supreme Court in *Newark City Bank* v. *Assessor of the Fourth Ward of the City of Newark,* 1 *Vroom* 1, that the state had no power to impose taxation upon state bonds and the securities of the United

States.  This decision was made in June, 1862.  By the acts of April 14th, 1864, and April 6th, 1865, providing for a state tax, the legislature provided that it should be levied upon taxable real and personal property and upon other objects liable to taxation.  *Id.* 1864, *p.* 730 ; *Id.* 1865, *p.* 835.  The indefiniteness of these legislative enactments left the legislative purpose with regard to the taxation of state bonds and United States securities somewhat indefinite.  Then followed the act of 1866, which in its fifth section, in its enumeration of property exempt from taxation, included bonds and other securities of the United States, and the bonds and securities of this state, which by law were exempt from taxation.  The language of this section follows closely the words of the act of congress, as well as the words of the act of 1861, which authorized the issue of state bonds.

Comparing the act of 1866 with the act of 1862, with the intermediate decision in *Newark City Bank* v. *Assessor, &c., supra,* it seems to us quite plain that the object of the later act was not to create an exemption by force of the state law, but to so model our legislation as to conform to the national and state legislation with respect to exemptions from taxation of property which under the generality of the language in the act of 1862, as well as in the act of 1866, would be subject to taxation.  Rejecting the punctuation, the primary question which arises is whether the concluding words, " which are by law exempt from taxation," would apply as well to bonds and other securities of the United States as to the bonds and securities of this state.  We think that these words should be given the broadest application, for these reasons : (1) The collocation of the words " securities issued by the United States government" with the words " bonds and securities of this state," followed by the words "which are by law exempt from taxation," indicates a purpose on the part of the legislature to comprise securities of both kinds in one class, to which the descriptive words " which are by law exempt from taxation " are equally applicable.  The rest of the sentence in that subdivision describes the property which by force of that section

was relieved from taxation, although the state had power to impose taxation thereon; namely, "the property of the counties, townships, cities and boroughs of this state." It is highly improbable that the legislature in reaching out for property for taxation to meet increased expenditures in 1866 should have made an express exemption of such state bonds only as were exempt from taxation and should have extended the exemption absolutely and unqualifiedly to federal bonds. The presumption is that the state would have been more disposed to exempt from taxation all state bonds, whether exempt by the law authorizing them or not, to facilitate their negotiation, than to grant that privilege to securities of the United States, which the federal government had not thought proper to make free from state taxation. It is manifest, when the collocation of words in the first branch of section 5 is considered in connection with antecedent legislation, that the legislative purpose in the act of 1866 in that division designed to divide property for exemption into two classes: First, a class which comprised federal and state securities which were exempted for the reason that they were by law (and not by force of that provision) not subject to taxation, and second, other property, such as that of counties, &c., which the state from reasons of public policy abstained from subjecting to taxation. Second, the primary rule for the construction of Tax laws is that in taxation from year to year each act of taxation is a separate and distinct thing, appealing to the law in force when the tax is laid to support the imposition. It is on this principle that the courts hold that the constitutional provision that property shall be assessed for taxes under general laws and by uniform rules according to its true value abrogated all special laws for assessing property for taxation. *North Ward National Bank* v. *Newark,* 10 *Vroom* 380, 387. The descriptive words of the United States securities, " which are by law exempt from taxation," relate to an exemption from taxation which is in force when the particular assessment is made. To give section 5 of the Tax law a relation to the condition of things in that respect that existed when the act

was passed would require the insertion into the body of the act of the word " now," and make this section apply to property exempt from taxation when the act was passed, excluding property of the same class and description which would be taxable under the general law in subsequent assessments—a construction which would render the act special. *Pierson* v. *O'Connor*, 25 *Vroom* 36 ; *Bennett* v. *Trenton,* 26 *Id.* 72, 76 ; *State* v. *Post, Id.* 264. The constitutional provision which gives the legislature the power of selecting the subjects of taxation requires that all members of the class selected shall be included in the taxing law, and if those requirements are not complied with the law would be unconstitutional. *State Board of Assessors* v. *Central Railroad Co.,* 19 *Id.* 146. By section 15 of the act of 1866 the prosecutor was liable to an assessment for taxation for the property comprised in this assessment under the description of " property and valuable assets " in that section. The prosecutor, being taxable for this property in virtue of the language contained in section 15, is not relieved from such taxation unless at the time of this assessment such property was by some other law exempt from taxation.

By an act of congress passed August 13th, 1894, it was enacted that " United States legal tender notes and other notes and certificates of the United States payable on demand and circulating or intended to circulate as currency and gold, silver or other coin, shall be subject to taxation as money on hand or on deposit under the laws of any state or territory." 28 *Stat. at L.* 278. By force of this statute the securities now in controversy were made liable to taxation, and do not come within the descriptive words of the exemption contained in section 5 ; namely, " securities of the United States which are by law exempt from taxation." Bonds of the United States are not within the federal statute of 1894, and, therefore, at the time this assessment was made answered the description of United States securities which were by law exempt from taxation, and the assessment of taxes in this instance excluded such bonds from the computation of the property of the prose-

cutor for which the tax was laid.    The act of congress having removed legal tender notes and certificates from property not taxable by the states, such securities are not within the exemption of section 5, and are within the words " property and valuable assets " in section 15, and are liable to taxation as such.

Another question is discussed by counsel.    It appears by the state of the case that all the notes and certificates included in this assessment were issued while acts of congress were in force which forbade taxation on them by the states, and, therefore, it is argued, the holders of such obligations are entitled to claim exemption from taxation thereon as a contract with the government which neither congress nor our legislature can violate.    The provision of the federal constitution prohibiting laws impairing the obligation of contracts applies to the states only.    From February, 1862, until the act of 1894 there have been acts of congress exempting from state taxation all the stocks, bonds, treasury notes and other obligations of the United States.    This legislation created no contract either with the state or with the federal government, and when congress by the act of 1894 conferred upon the state power to tax the class of securities now in controversy, the disability of the states to tax such securities was removed and such property became part of the property within the state which was liable to taxation.

The assessment should be affirmed, with costs.