214 N.J. Super. 379 (1986)
519 A.2d 895
FLORA KATZ AND PAUL KATZ, PLAINTIFFS-RESPONDENTS,
v.
RAHWAY HOSPITAL, JOHN L. YODER, DIRECTOR OF RAHWAY HOSPITAL, ROBERT POHAMUS, DIRECTOR OF SECURITY OF RAHWAY HOSPITAL, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 1986.
Decided December 19, 1986.
*380 Before Judges O'BRIEN and LANDAU.
Richard A. Amdur, attorney for defendants-appellants.
Horowitz & Horowitz, attorneys for plaintiffs-respondents (Victor J. Horowitz, on the brief).
The opinion of the court was delivered by LANDAU, J.S.C. (temporarily assigned).
*381 This is an appeal by defendant Rahway Hospital from a judgment for $10,000 plus interest and costs rendered in favor of plaintiffs Flora and Paul Katz after jury trial on a negligence claim arising out of the mugging of Flora in the hospital parking lot after visiting hours.
The hospital contends that prejudicial error was committed during trial by reason of two evidence rulings by the trial judge, and further contends that if the verdict in favor of plaintiffs is permitted to stand, the court erred in molding the jury verdict against the hospital under N.J.S.A. 2A:53A-8 by reducing it to $10,000 and then adding interest and costs, rather than limiting recovery to $10,000, inclusive of interest and costs. We disagree, and affirm.

THE EVIDENCE RULINGS
During the trial, the hospital sought to demonstrate the reasonableness of its security precautions by offering proof of the extent of its total security expenditures compared to that of hospitals in the nation as a whole and to average expenditures in the State of New Jersey. These figures were offered on the basis of an expenditure per 1,000 square feet, but parking lots were not included in this square foot calculation. The trial judge declined to permit comparison of the expenditures with the various averages, because of the great differences between conditions in the respective communities. He did permit evidence of the hospital's security expenditures expressed as a percentage of its total budget. An offer of proof was permitted, and we are satisfied that the judge's ruling, evidently made under Evid. R. 4 (the court stated "therefore, it would be too prejudicial without any real basis") was a reasonable exercise of discretion with which we decline to interfere. Additionally, we note that the trial issue related to adequacy of security in the parking lot, and evidence respecting general expenditures for security with no indication of the *382 extent, if any, of parking lot security expenditures was of such dubious value as to warrant its exclusion on relevance grounds, Evid. R. 1(2), as well as Evid. R. 4 considerations.
The hospital also contends that it was unduly prejudiced by the trial judge's refusal to exclude the testimony of Gerald O'Rourke, who testified as an expert in security, because he was not qualified as an expert on hospital security, and had not consulted security guides expressly designed for hospitals.[1] There is no question, however, that Mr. O'Rourke was possessed of sufficient qualifications to be permitted to testify as a security expert, and it was for the triers of fact to determine what precautions were reasonable for the particular parking lot in which the incident occurred. In reviewing the record, we are satisfied that Mr. O'Rourke's testimony and opinion was properly submitted to the jury on this question. See Butler v. Acme Markets, 89 N.J. 270, 283 (1982); Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950). The jury was properly charged respecting expert testimony.

INTERPRETATION OF N.J.S.A. 2A:53A-8
N.J.S.A. 2A:53A-8 (L. 1959, c. 90, p. 222, § 2) was enacted following the landmark opinions in Dalton v. St. Luke's, 27 N.J. 22 (1958); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); and Benton v. Y.M.C.A., 27 N.J. 67 (1958). It provides:
Notwithstanding the provisions of the foregoing paragraph, any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its *383 agents or servants to an amount not exceeding $10,000.00, together with interest and costs of suit, as the result of any 1 accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $10,000.00 such nonprofit corporation, society or association organized exclusively for hospital purposes shall not be liable therefor.
The hospital contends that the phrase "... to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $10,000.00 such nonprofit ... [hospital] ... shall not be liable therefor" limits total possible recovery to $10,000. Plaintiffs urge that the legislative intention is expressed in the preceding phraseology, "... any nonprofit ... [hospital] ... shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such [hospital] ... to an amount not exceeding $10,000.00, together with interest and costs of suit...."
The briefs of each party simply urged us to consider the quoted portion of the statute which harmonizes with its own position. We recognize that, read alone, the quoted passages appear inconsistent.
Our research indicates that there was no legislative statement accompanying chapter 90, but that there were legislative hearings conducted which confirm, as indeed the date of the statute would imply, that it was intended as a response to the Collopy trilogy.
Although the legislative intent to restrict the broad scope of Collopy is apparent, there is no clear cut expression of legislative purpose to see to it that injured beneficiaries of a charitable hospital should receive only the minimum possible recovery; rather there was an evident purpose to reconcile two important interests within a compromise position deemed by the Legislature to be fair to each. Thus, the overall legislative purpose does not in itself convey a clear message as to the intended interpretation on this issue. The general language of the statute itself, however, is a reliable guide. Legislative intent may be implied from the language used in a statute as well as inferred on grounds of policy and reasonableness. Kohler v. *384 Barnes, 123 N.J. Super. 69, 81 (Law Div. 1973). We note N.J.S.A. 2A:53A-7 (L. 1959, c. 90, p. 221, § 1) which provides the generalized charitable immunity to which N.J.S.A. 2A:53A-8 constitutes a limited exception, speaks in terms of liability "to respond in damages to any person who shall suffer damage...." Similarly, N.J.S.A. 2A:53A-8 begins by describing the extent to which charitable hospitals "... shall be liable to respond in damages...." Although we may give no determinative effect to the statutory heading,[2] which states "Liability to beneficiary suffering damages not exceeding $10,000" we agree with the propounder of that heading that chapter 90 speaks primarily to the question of damages and to the limitation upon recovery of damages. Moreover, the alternate interpretation would have the effect of discouraging early disposition by removing the incentive of interest avoidance.
As a general rule of legislative construction, statutes in derogation of common law are to be strictly construed, White v. Tp. of North Bergen, 77 N.J. 538, 559 (1978), and the intent to change the common law must be clearly and plainly expressed because an intent to alter the common law rule further than clearly expressed is not to be implied. Blackman v. Iles, 4 N.J. 82, 89 (1950). The scholarly opinion of Justice Jacobs in Collopy, 27 N.J. at 45, calls our attention to the fact that the doctrine of charitable immunity was not part of the common law inherited from England, but entered our common law in 1925 by virtue of the decision in D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925), the policy of which was rejected in Collopy, Dalton and Benton.
Thus, under common law existing in New Jersey by virtue of the Collopy decision at the time of the enactment of N.J.S.A. 2A:53A-7 et seq. there was no charitable immunity. To minimize deviation from the common law, the Katz's should receive *385 benefit of a construction which permits a damage recovery to the full extent of the statutory dollar limit. As previously indicated, we do not find this inconsistent with the overall legislative intent, and it appears to harmonize with the emphasis in the statutory language upon limiting recovery of damages.
Further, we note that this conclusion also confers a constitutional construction upon N.J.S.A. 2A:53A-8 in that it avoids conflict with the court's rule making powers, pursuant to which an award of prejudgment interest, as well as post-judgment interest, is ordinarily required in tort cases. R. 4:42-11; cf. Winberry v. Salisbury, 5 N.J. 240 (1950). Accordingly, we hold that Flora and Paul Katz properly received a judgment molded to $10,000 for damages, together with prejudgment interest and costs.
Affirmed.
NOTES
[1] Defendant's objection to O'Rourke's qualifications also indirectly suggests that a different standard of liability should be imposed upon charitable hospitals respecting duty of care in their parking lots from that imposed upon other parking lot operators. This was not directly raised at trial. In any event, we note that the Legislature has elected to impose a maximum dollar exposure under N.J.S.A. 2A:53A-8 (discussed below) rather than to alter standards of care by classification.
[2] See State v. Greene, 33 N.J. Super. 497, 500 (App.Div. 1955); Howard Savings Inst. v. Newark, 63 N.J.L. 65 (Sup.Ct. 1899) rev'd other grounds 63 N.J.L. 547 (E. & A. 1899).