## Commonwealth, Appellant, v. Houck.

Submitted December 2, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Grant E. Wesner,* Deputy District Attorney, and *Robert L. VanHoove,* District Attorney, for Commonwealth, appellant.

*Peter F. Cianci,* and *DeLong, Dry, Cianci & Grim,* for appellee.

514

OPINION BY VAN DER VOORT, J., March 31, 1975:

This is an appeal from an Order of Judge Warren K. HESS, Presiding with a jury, dismissing the case and dividing the costs between the defendant and the party who initiated the complaint, which party was found by Judge HESS to be the "real prosecutor". The Commonwealth, appellant, argues two points:

(1) That the trial judge abused his discretion in dismissing the case pursuant to Section 312 of the Crimes Code;[1] and

(2) That the trial judge erred in placing one half the costs on the person he determined to be the "real prosecutor."

Lester Leinbach had been bothered by telephone calls which he claimed came from Kenneth Houck. Leinbach reported these calls to a local police officer who signed a criminal complaint against Houck alleging violation of Section 5504 of the Crimes Code.[2]

The Grand Jury bound the defendant over for trial which was held on March 13, 1974. The evidence showed that from June 11-14, 1973, four calls were made from the Houck telephone number to the Leinbach telephone number. Houck admitted that he made a call to Leinbach on June 11th and told Leinbach during the conversation that he was "lower than dirt", "morally rotten" and should be thrown out of the church and the Masons.

---

1. Act of 1972, December 6, P.L. 1482, No. 334, Section 312 (18 Pa. C.S. §312).

2. This Section provides as follows:

"§5504. Harassment by communication or address—

(a) Offense defined.—A person commits a misdemeanor of the third degree if, with intent to harass another, he:

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly; or

(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language."

There was a dispute as to whether Houck cursed at Lein-bach and as to whether Houck made the other three calls during which no conversation took place because the caller did not talk. The testimony further developed that Houck and Leinbach had been good friends; that Houck had invited Leinbach to the Houck home frequently both before and after Leinbach's wife had died. Leinbach had taken Mrs. Houck down to Maryland on one of his fishing trips and he had loaned her two thousand, five hundred ($2,500.00) dollars to institute divorce action against Houck who was contesting it.

After the close of the testimony the trial judge found that the defendant had not used "lewd, lascivious or indecent words or language." Further, that if Section 5504 had been violated it was only to an extent too trivial to warrant a conviction and that there were "present such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense."[3] At the conclusion of the testimony the trial judge dismissed the indictment and placed the costs equally upon the defendant Houck and upon Leinbach whom he found to be the real prosecutor.[4] The

---

3. The trial judge filed his written statement giving the reasons for his dismissal.

4. The trial court's dismissal was pursuant to Section 312 of the Crimes Code which is as follows:
"§312.  De minimis infractions—
(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
(1)  was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
(2)  did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
(3)  presents such other extenuations that it cannot reason-

Commonwealth claims that Section 312 of the Crimes Code is unconstitutional because it has no standards or guidelines limiting the Court in its determinations under the Section. We disagree. The provision relating to de minimus infractions was first proposed in the Model Penal Code, Section 2.12. It was adopted in toto by our Legislature. The standards or guidelines set forth in Section 312 are overall that the trial judge act pursuant to this section, must consider "the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances." In making these considerations the law requires that the judge must find ". . . that the conduct of the defendant was within a customary license or tolerance [neither expressly negatived by the person whose interest was infringed] nor inconsistent with the purpose of the law defining the offense;" or did so only to an extent too trivial to warrant the condemnation of conviction; or presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense." These requirements appear to us to be adequate standards and guidelines which the trial judge must follow in arriving at a decision under Section 312. Certainly a decision to define what constitutes "de minimus infractions" would be a task of such magnitude as to defy accomplishment. The appellant claims that in this case the trial judge abused his discretion in dismissing the case under Section 312.

Our Legislature has provided for such action by the trial judge when the infraction is "de minimis." Guidance as to what the term imports is given in *United States v. Lamb,* 294 F.Supp. 419, 420 (E.D. Tenn. 1968) : "This

---

ably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

(b)   Written statement.—The court shall not dismiss a prosecution under paragraph (a) (3) of this section without filing a written statement of its reasons."

doctrine applies to questions of minimal damage and transactions between one person and another, not to transactions between a person and the sovereign." Section 312 now makes the doctrine applicable between persons and the sovereign in the criminal field.

Section 312 also makes applicable to Pennsylvania criminal law the principal "de minimis non curat lex," the law does not concern itself with small or trifling things. Upon the facts in the instant case Judge HESS adequately points out the facts that Leinbach and defendant had known each other for years, that a difficulty had arisen in their acquaintanceship, and that there had been telephone communication between the two. He decided he could not permit the jury to guess as to the criminal nature of such communication when the Commonwealth's proof was deficient in its proof of intent to harass by the calls. More to the point, however, the trial judge would not let this trifling matter proceed to verdict and so invoked Section 312 of the *Crimes Code*. We agree with the propriety of the trial judge's action in dismissing the case.

Section 312 of the Crimes Code makes no provision for the disposition of the costs of the case. The power and authority of the Court to place costs upon the defendant or the prosecutor requires statutory authority. The Act of 1860, March 31, P.L. 427, §62, 19 P.S. §1222 makes a provision for a jury to place the costs upon a prosecutor and/or a defendant in the event of an acquittal. It does not empower a Judge to do it. This Act, however, has been held unconstitutional in *Giaccio v. State of Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), and the Legislature has not seen fit to attempt the reenactment of that section of said Act. Were the Court empowered to apportion the costs between a defendant and a prosecutor it would have the power to distinguish the real prosecutor from the nominal prosecutor and determine who the real prosecutor is. However, there is

now no statutory authority for the assessment of costs against a prosecutor or defendant.[5] In the event of the dismissal of the charge under Section 312 of the Crimes Code and in the absence of such authority the assessment must fall.

Order affirmed as to the dismissal of the indictment, however the Order placing one half the costs on the prosecutor Leinbach is vacated and the same are placed on the County of Berks.

---

5. There are a number of statutes relating to the assessment of costs, none of which is apropos here.