432 A.2d 1001

**COMMONWEALTH of Pennsylvania,**

v.

**Dante GILL, Debra Dremsek, Frank Kicielinski, Thomas Clipp, Appellants.**

**COMMONWEALTH of Pennsylvania,**

v.

**Donna M. POTTS, John R. Levey, Alicia Cutsinger, Susan Kim Clarke, Appellants.**

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed May 8, 1981.

Rehearing Denied Aug. 3, 1981.

Petition for Allowance of Appeal Denied Sept. 30, 1981.

Carl M. Janavitz and Rochelle S. Friedman, Pittsburgh, for appellants.

Charles W. Johns, Assistant District Attorney, Pittsburgh, did not file a brief on behalf of Commonwealth, appellee.

Robert L. McTiernam, Pittsburgh, for participating party.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

The eight appellants in this matter pled guilty to various charges. They then took exception to the bill of court costs and other fees assessed against them. They now appeal the lower court's denial of their exceptions.

The appellants were before the court below in two groups of four, divided as indicated in the caption above. The prosecution of each group was, apparently, unrelated to that of the other; as far as can be determined, the two groups of cases have been consolidated for argument before us only because both groups of defendants pled guilty on the same day and were represented by the same attorney.[1]

Appellants were charged, and pleaded guilty, as follows:

1. The legal issues raised by each group's appeal are the same, however.

| Name | Originally charged with[2] | Pled guilty to |
|---|---|---|
| Gill | promoting prostitution | disorderly conduct[3] |
| Dremsek | prostitution[4] | disorderly conduct |
| Kicielinski | promoting prostitution | disorderly conduct |
| Clipp | aggravated assault[5] | simple assault[6] |
| Potts | prostitution (2 counts) promoting prostitution (4 counts) criminal conspiracy[7] | being an inmate of a house of prostitution[8] |
| Levey | promoting prostitution (4 counts) criminal conspiracy (2 counts) | promoting prostitution |
| Cutsinger | prostitution (2 counts) criminal conspiracy | being an inmate of a house of prostitution |
| Clarke | prostitution (2 counts) criminal conspiracy | being an inmate of a house of prostitution, |

The court then ordered each defendant's sentence suspended upon payment of a fine and costs of prosecution. Since the court directed that the monies be paid "forthwith," the defendants proceeded immediately to the Office of the Clerk of Courts of Allegheny County, whose personnel determined the amounts. Appellants excepted below to the various assessments on a number of grounds, contending generally that the clerk had no authority to calculate the costs as he did. The court below, after an evidentiary hearing, denied appellants' exceptions. We agree with certain of appellants' arguments, and reverse as to them; the record being inadequate to allow us to determine some of the remainder, we vacate the order of the court below as to them and remand for an evidentiary hearing of such matters as we shall set forth.

The briefs and record leave much to be desired and we shall try now to organize the issues here in some coherent

2. 18 Pa.C.S. § 5902(b).

3. 18 Pa.C.S. § 5503.

4. 18 Pa.C.S. § 5902(a).

5. 18 Pa.C.S. § 2702(a).

6. 18 Pa.C.S. § 2701(a).

7. 18 Pa.C.S. § 903(a).

8. 18 Pa.C.S. § 5902(a)(1).

fashion. Since each of the eight appellants raised several objections to his or her own bill of costs, all presentations—whether of law or of fact, whether in the court below or in this court—should be divided into eight sections. Each appellant's section should then be subdivided into as many subsections as that appellant has legal challenges to the costs—one challenge per subsection. If this case be appealed again, after remand, we expect that counsel and the court below will have followed this procedure.

Before we begin our analysis, we find it necessary to point out that most of the statutory provisions cited by both sides and the lower court have been repealed by the Judiciary Act Repealer Act (JARA).[9] This repeal has only limited effect on the law governing the case before us, however. Since a number of JARA's sections were special repeals which took effect June 27, 1979, the now repealed sections were still in effect in September of 1978, when these proceedings took place. Most of the other repealed laws have been replaced with Judicial Code[10] sections providing that the governing authority (i. e., the Supreme Court of Pennsylvania[11]) shall prescribe, by general rule, the standards governing the activities formerly regulated by the repealed sections. Since the Supreme Court has yet to prescribe any such general rules, the so-called "fail-safe" provision of JARA[12] operates to receive the prior statutes into the common law of Pennsylvania. To avoid the boundless confusion inherent in frequent historical reference to the statutes whose repeal was effective nine months after the events they controlled

---

9. 1978, April 28, P.L. 202, No. 53.

10. 42 Pa.C.S. §§ 101–9148.

11. 42 Pa.C.S. § 102.

12. Section 20003 of JARA provides, in relevant part:
   If no such general rules are in effect with respect to the repealed statute on the effective date of its repeal, the practice and procedure provided in the repealed statute shall continue in full force and effect, as part of the common law of the Commonwealth, until such general rules are promulgated.

and to the myriad statutes preserved in the limbo of the received common law until the Supreme Court promulgates appropriate general rules, we shall cite all such provisions as though they were in effect today.

■ The general propositions of law upon which we base our opinion in this matter are that costs must not be assessed except as authorized by law, *Commonwealth v. Houck*, 233 Pa.Super. 512, 335 A.2d 389 (1975); and that the burden of justifying, by a preponderance of the evidence, costs imposed upon a defendant rests upon the Commonwealth. *Commonwealth v. Coder*, 490 Pa. 194, 201, 415 A.2d 406, 410 (1980).

We shall first consider the costs assessed in the case against Gill, Dremsek, Kicielinski and Clipp. The most direct evidence of the amounts charged each defendant, and the purported basis therefor, is a form styled "Clerk of Courts Cost Docket." The record contains one such document for each appellant.

### 1.

The first entry in the schedule of costs is each appellant's respective fine, which amounts are not challenged. The next entry is labelled "5% Poundage Fee on Fine & Restitution." Gill, Dremsek and Kicielinski have been charged fifteen dollars each thereunder, and Clipp has been charged two and one half dollars. Appellants likewise raise no objection to this fee.

■ The forms indicate next that each of the four was charged a "Court Fee" of eighty dollars. Appellants claim that this amount was not calculated according to law, and is, therefore, incorrect. According to the parties' stipulation and certain testimony of the Clerk of Courts, the "Court Fee" represents the charge for two days: a pre-trial hearing of some sort on September 7, and the September 25 proceeding at which all of the appellants pleaded guilty. A flat fee of sixty dollars was assessed for the first day and twenty dollars for the second. Robert Wells, an employee of the Clerk's office, testified that "there's no charge on a pre-trial

except for witness fees and subpoena fees." There is no legal authority for a flat fee of sixty dollars for the first day and twenty dollars per day or part thereafter. Title 17 P.S. § 444 contains a lengthy list of the fees and costs which may be collected by the Allegheny County Clerk of Courts.[13] Nowhere is a fee schedule such as that applied by the clerk authorized. The only justification of this practice offered by the clerk is that the flat fee usually approximates what he claimed would be the exact charges were they lawfully calculated.[14] This, obviously, is not sufficient. Costs must not be assessed except as authorized by law. *Commonwealth v. Houck, supra.*

■ Appellants' argument that the Clerk of Courts is not authorized to collect the fees allowed the district attorney by 16 P.S. § 11444 [15] is without merit. Title 16 P.S. § 4403 provides that such fees are to be part of the costs, and Allegheny County Local Rule of Criminal Procedure 1407.3 lawfully authorizes the payment of costs to the clerk. Title 16 P.S. § 11011–12(b) provides for the payment of this fee to the county.

## 2.

■ The record is insufficient to permit resolution of the claim of Gill, Dremsek, Kicielinski and Clipp that, because they should have been prosecuted together, under the same criminal information, the assessment of a separate and

13. Section 444 sets fees allowed to a county of the "second class," Allegheny County alone is a member of that class.

14. There is no record evidence of any exact determination of costs. Although the clerk's brief contains lists of charges purporting to be a detailed schedule of fees for appellants Potts and Cutsinger, "we are bound to consider only those facts which are in the record, and may not consider those injected by the briefs . . . ." *Interest of Carroll,* 260 Pa.Super. 23, 27 n.4, 393 A.2d 993, 994 n.4 (1978); *see Commonwealth v. Rini,* 285 Pa.Super. 475 at 481–483, 427 A.2d 1385 at 1388–1390 (1981).

15. This section provides a district attorney's fee of twenty-five dollars for the first day of trial and ten dollars for each day (or part) thereafter.

aggregated bill of costs against each of them is unlawful. Pennsylvania Rule of Criminal Procedure 131 provides:

(a) When more than one person is alleged to have participated in the commission of an offense, the issuing authority shall accept a complaint for each person charged. Each complaint shall contain the names of all persons alleged to have participated in the commission of the offense and shall contain a reference to the docket number of the complaints issued for other alleged participants. Such complaints may be consolidated for hearing or such further action as may be required, and where complaints are consolidated, additional costs shall not be taxed as a result of the acceptance of separate complaints.

(b) When more than one offense is alleged to have been committed by one person arising from the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case.

(c) Upon application by any interested person and proof that any provision of paragraphs (a) or (b) hereof was violated, a judge of the court may order forfeiture of all additional costs of the issuing authority accrued by reason of such violation, and thereafter such costs shall not be taxed in the case.

It cannot be determined, on the record of this case, which of the offenses to which appellants pled guilty arose from common criminal incidents or whether more than one appellant participated in any single incident. We, therefore, remand the cause for such determination. *See also* Pa.R. Crim.P. 228.

3.

Gill Kicielinski, Dremsek and Clipp were admitted to bail. Each was permitted to put up ten per cent of the amount of bail set, as provided by Pa.Crim.P. 4006. Upon entry of their guilty pleas, the appellants were refunded their deposits, less three per cent of the full amount of the bail (in other words, thirty per cent of the deposit) "for the use of the County of Allegheny," pursuant to Allegheny

County Local Rule of Criminal Procedure 4006(c).1. Appellants contend that this deduction is not authorized by law.

Pa.R.Crim.P. 4015 provides, in relevant part:

When a sum of money equal to a percentage of the full amount of bail has been deposited, the issuing authority or clerk of court shall return the same to the depositor within (20) days after full and final disposition of the case, less a reasonable charge *relating to the costs of administering the percentage cash bail program.*

(Emphasis added.)

Appellee claims that the record shows that the cost of administering the percentage bail programs, in 1977, was $72,000.00. An employee of the clerk's office testified that, in that year, the deposit deduction generated $58,638.28, which amount was transferred to the Allegheny County Treasury. Appellee argues that, as a matter of law, the fee is "a reasonable charge" within the meaning of Rule 4015, because the latter amount is smaller than the former.

The purported facts upon which appellee has based his conclusory argument, when considered in light of the remainder of the record, are insufficient to show that the fee conforms to law.

The cost figure of $72,000.00 finds no support in the record. James Lotz, the director of the Allegheny County Bail Agency, testified that that agency's budget in 1977 was $180,000.00.[16] Appellee's brief notes this testimony, and then states that "[f]orty percent (40%) of that budget is directed to the processing of percentage bonds." This statement is without foundation. The only reference to forty per cent of anything appears in the following testimony of Lotz:

Q. Mr. Lotz, is more effort expended by your office in processing a nominal bond or a percentage bond?

A. They're the same.

Q. The same effort.

16. He testified with reference to figures he had prepared especially for the hearing. The document containing the figures was not made part of the record.

Can you estimate—40, 50, 60, 70 percent, a ballpark figure—the amount of time expended by your staff for percentage bail defendants?

A. Half of the people are released on nominal bail roughly. I would say 40 percent of the remainder are putting up some sort of cash bail. The other ten percent are using a commercial surety.

The conclusion that forty percent of the Bail Agency's budget must be allocated to the costs of administering the percentage cash bail program because "40 percent of the [defendants] are putting up some sort of cash bail" represents a quantum leap not justified by the record.

Although the rest of Lotz's testimony is not at all inconsistent with the budget figure of $180,000.00, the estimate that forty percent of bailed defendants are released on percentage bail, or the deduction total of $58,638.28, it flatly contradicts appellee's position:

Q. All right. Now, in the prepartion [sic] of your budget do you distinguish between that which it costs to administer the cash percentage bail system and that which it costs to administer the nominal bail system?

A. No.

Q. Have you ever done so in the years 1975 through the year 1979?

A. No.

Q. So that, in terms of actual cost, you do not distinguish between the two; is that correct?

A. No.

Q. Now, from the years 1975 through the years 1978—or the present time—have you ever received from the Clerk of Court's Office of Allegheny County a notification as to those sums received by it as commissions on percentage bail posted?

A. No.

Q. Have you received such figures from any other agency in the County?

A. No.

Q. Are you aware of whether such figures do or do not exist?

A. I'm aware that it can be ascertained. I have not done that.

Q. It is not then a factor in the preparation of the next year's proposed budget for your agency; is that correct?

A. An estimate of the income would be a factor, yes.

Q. And you utilize that?

A. Let me give you a little background here. When we changed the bail system from a ten-dollar flat service fee to the three percent service fee the purpose of the change was to generate income to make the Bail Agency self-sufficient. At that time I did a projection based on the prior year's bond amounts. Based on that I came up with a figure of $125,000 that would be generated if the same percentage held true this year. Now, as part of the budget process—and I won't do this—but as part of the budget process the budget officer for the Court in connection with the budget office in the Controller's Office will determine how much money will be brought in.

Q. But there would be no way, based on your figures of the cost of administration, to relate that to the cost of adminstering [sic] the percentage cash bail system that you run; is that correct?

A. Put that a little different way. I don't know. I can make an educated guess as to the cost based on income expected to be received versus what it costs to have 15 people employed and buy pencils and paper.

Q. What I'm asking you is this: You have not determined nor do you determine—if I am correct—the cost of administering the cash percentage bail portion of your work; is that correct?

A. No.

Q. So that these figures could not be—if we were to have them and to have them accurately—could not be related to such a figure; would that be correct?

A. Yes, but I want to clarify that yes somewhat, too. You cannot break out the difference between nominal bonds and cash percentage bonds because as our work begins we don't know what it's going to be.

The record, in its present state, shows only two of the things necessary to relate the bail deposit deduction to the costs of administering the percentage cash bail program: the total of such deductions collected in the year on which appellant's costs allegedly were based, and the bail agency's total budget for the same year. The record contains no evidence of the administration costs of the percentage cash bail program. Obviously, in order to relate the monies collected under the broad rule authorizing the percentage deduction to the costs of the bail program, such costs must be shown on the record. We, therefore, remand the cause for hearing of evidence relevant to this matter.[17]

We shall now consider appellants Levey, Clarke, Cutsinger, and Potts.

### 4.

Each of the four was charged a "Court Fee" of sixty dollars for one day on the same basis as the group of appellants considered above. This charge must be vacated, and the cause remanded, for the reasons set forth in our discussion of the same issue in section 1 above.

### 5.

These appellants raise several objections to the charging of witness fees.[18] It appears, from the transcription of the hearings below, that a witness in Allegheny County criminal proceedings is paid $5.70 per day. This fee is disbursed for

17. While there may indeed be serious constitutional problems with a fee system that takes more money from defendants who are convicted than from those acquitted, we do not reach this issue, because appellant did not raise it in the court below and thus waived it. Pa.R.A.P. 302(a).

18. Appellants claim that a person called as a witness by the Commonwealth was present on only one day instead of the two for which charges were assessed. The court below found, upon evidence presented, that the witness had attended on both days, and we accept this finding.

each day of actual attendance in court under subpoena, without regard to the number of cases in which he or she was involved. 19 P.S. § 1237. Since the record does not show which witnesses were present under subpoena and which not, this factual issue must be heard and decided by the lower court upon remand.

■ Regardless of the resolution of the above issue, however, it is obvious that the manner in which the clerk of courts has assessed witness fees is incorrect. A court functionary, relying on a "witness card" (which was not made part of the record), testified that three witnesses attended upon the joint case of Levey, Clarke, Cutsinger and Potts. One of these three witnesses was present on two days, and was thus entitled to two daily fees. The other two were present on only one day. Potts was assessed a witness fee of $5.70, and Levey a fee of $7.60. The method by which Levey's fee was determined has no basis in law. The functionary testified that since the three witnesses were entitled to four daily fees totalling $22.80, and since two of the three informations laid against Levey had been withdrawn by the Commonwealth, leaving only one (that is, one third of the original number), the witness fee to be assessed was one third of the total amount to be disbursed to the witnesses. We have been cited no authority for this novel method of calculation, undoubtedly because none exists. The practice is, therefore, illegal.

■ Because Potts was also charged a witness fee, we find it necessary to point out that the amount to be paid to witnesses limits the amount which may be collected from defendants. In the case before us, no more than $22.80 may be collected, in the aggregate, from the defendants against whom the witnesses were to be used, regardless of the number of informations filed against the four of them. 19 P.S. § 1237; *Batdorff v. Eckert*, 3 Pa. 267 (1846); *Horner v. Harrington*, 6 Watts 331 (1837); *Curtis v. Buzzard*, 15 S. & R. 21 (1827); *Commonwealth v. Cozens*, 1 Ash. 265 (C.P.Phila.1830).

### 6.

■ Three criminal charges were filed against Levey, on three informations. He pleaded guilty to one charge and the court granted the Commonwealth's motion of *nolle prosequi* regarding the other two charges. Levey now claims that the court clerk improperly assessed costs for all three charges and divided the total by three. Other than the matter of the witness fees discussed above, we find no evidence of any such procedures in the record. We point out, however, that, should any fees be charged upon remand, the assessment of costs on charges withdrawn or dismissed is illegal. *See* 19 P.S. § 1221 and 19 P.S. § 1223.

### 7.

■ In connection with the witness fees, the "Cost Docket" shows, further, that Levey, Clarke, Cutsinger and Potts were assessed varying number of "probate" fees of fifty cents each. An employee of the office of the court clerk testified that a "probate is a 50-cent charge when somebody's paid by the Clerk of Courts...." Apparently, the fee is a surcharge collected from a defendant whenever a disbursement of costs is made to a witness, process server, or person performing similar services to whom payment of a fee collectible from a party is authorized by law. We have, however, found no legal authority for this so-called "probate" fee; the monies collected as such must, therefore, be refunded.

### 8.

■ As a final matter involving appellants' challenge to the fees imposed in connection with witnesses,[19] Allegheny County Local Rule of Criminal Procedure 131.1 provides:

In no case shall any costs be taxed for any constable or any other officer for the service of any subpoena or for

[19.] The clerk of courts argues that this issue has been waived because it was not raised in written exceptions below. However, exception was taken to the fees assessed for service of subpoenae by police officers and detectives; read generally, this exception fairly raises the issue whether any amount at all may be assessed.

any mileage thereon, unless said constable or other officer shall have first made and subscribed to an affidavit that he has made an actual personal service of said subpoena upon each of the witnesses as to whom he claims a fee for service, and that he has at the time of said service delivered to each of said witnesses a written notice of the time and place of the hearing or trial.

Since the record shows that no such affidavits were made, the assessment of fees for service of subpoenae was improper, and those amounts must be refunded appellants.

Our mandate, therefore, is as follows:

1) The "court fee" is vacated as to each appellant, and the cause remanded for an itemized factual determination, on the record, of the daily and other fees authorized by law.

2) The cause is remanded also for determination of the costs of administering the percentage cash bail program operated by the Allegheny County Bail Agency and for decision of the legal issue based thereon.

3) Upon remand, the court below is to hear and determine the matter of which witnesses attended the court under subpoena and which did not, since only those under subpoena may be paid a witness fee.  19 P.S. § 1237.

4) The "witness fees" actually charged Levey and Potts are vacated and must be refunded;  a new assessment may be calculated in a manner consonant with this opinion.

5) The so-called "probate" charges are illegal;  they are vacated and must be refunded appellants.

6) The fees assessed appellants for service of process are vacated and must be refunded.

While our decision today may cause consternation in the Criminal Courts of Allegheny County, we must, nonetheless, apply the law as it stands.  Chapter Seventeen of the Judicial Code is an attempt to clarify and standardize various activities, such as the assessment and collection of fees, which have, heretofore, been governed by an uncoordinated collection of statutes, statewide rules and local rules. Achievement of this worthy objective depends upon the

adoption by the governing authority, or its proper delegate, of appropriate general rules. Until the halcyon day when such is done, we can do naught but continue to decide such matters according to the antiquated statutes and rules, now repealed and abrogated, but nonetheless received into the common law of Pennsylvania.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

This case arises out of various criminal charges made against the appellants. Appellants Gill, Dremsek and Kicielinski were charged with offenses involving prostitution, 18 Pa.C.S. § 5902, arising from the operation of the "Spartacus Lounge" in McKees Rocks. Appellant Clipp was charged with aggravated assault, 18 Pa.C.S. § 2702. On September 25, 1978, all of these appellants entered guilty pleas to reduced charges. The Honorable Bernard J. McGowan imposed sentence, which in each case consisted of a suspended sentence, various fines and payment of costs.

Appellants Clarke, Cutsinger, Levey and Potts were similarly charged with various offenses of prostitution 18 Pa.C.S. § 5902, and criminal conspiracy, 18 Pa.C.S. § 903, arising from activities at the "Hilltop Meditation Center" in Pittsburgh. These appellants also entered various pleas of guilty before Judge McGowan on September 25, 1978. The court immediately imposed sentence, which, again, consisted of a suspended sentence, various fines and costs.

A "Court Fee" in the amount of sixty ($60.00) dollars, in addition to other charges, was assessed by the Clerk of Courts against Appellants Levey, Clarke and Cutsinger. Appellants Gill, Clipp, Kicielinski, Dremsek and Potts were assessed a "Court Fee" of eighty ($80.00) dollars, as well as other fees.

All of the appellants paid their respective fines and costs on the day of sentence or the following day. Each of them then filed Exceptions to the Bill of Costs and, subsequently, Amended Exceptions. All of the Exceptions were denied by the Honorable Robert E. Dauer on August 13, 1979.

Costs must not be assessed except as authorized by law, *Commonwealth v. Houck*, 233 Pa.Super. 512, 335 A.2d 389 (1975); and the burden of justifying, by a preponderance of the evidence, costs imposed upon a defendant rests upon the Commonwealth. *Commonwealth v. Coder*, 490 Pa. 194, 202, 415 A.2d 406, 410 (1980).

I believe that the Commonwealth met its burden of justifying the costs in these cases. Accordingly, I would affirm the well-considered Opinion of Judge Dauer.