188 N.J. Super. 656 (1983)
458 A.2d 165
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT A. BROWN, DEFENDANT.
Superior Court of New Jersey, Law Division Mercer County.
Decided February 28, 1983.
*658 Read S. Howarth, Assistant Prosecutor for the State (Philip S. Carchman, Mercer County Prosecutor, attorney).
Donald R. Conway for defendant.
LENOX, A.J.S.C.
On November 15, 1981, while serving concurrent four-year terms at the New Jersey State Prison on convictions of firearms violations, defendant was found to be in possession of .65 gram of cocaine. Discovery of this contraband occurred during the course of a strip-search conducted by security personnel at the Jones Farm, a minimum security facility in the prison system. He is charged in an indictment returned by the Mercer County grand jury with possession of a controlled dangerous substance, in violation of N.J.S.A. 24:21-20(a)(1). By motion directed to the assignment judge pursuant to N.J.S.A. 2C:2-11 he seeks an order dismissing the indictment on the ground that the violation charged "represents a de minimis infraction." The statute, entitled "De minimis infractions," reads:

*659 The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.
Since this statute has not received the attention of our appellate courts, an analysis of its genesis, the intent of the Legislature in its enactment and the interpretations given similar laws in other states is enlightening.
N.J.S.A. 2C:2-11 establishes principles in our law without historical basis in New Jersey. It was enacted as a part of the New Jersey Code of Criminal Justice, chapter 95 of the Laws of 1978 effective September 1, 1979. The statutory language is patterned after that of § 2.12 of the Model Penal Code as adopted at the Annual Meeting of the American Law Institute in Washington, D.C., May 24, 1962. The Model Penal Code addresses a broad spectrum of criminal law areas and, with its Commentaries, is now a recognized treatise on the law of crime. Nearly 90% of the states have drawn upon the Code in codifications, revisions or proposed revisions of their criminal laws. Despite this broad acceptance, the "de minimis" provision has been interpreted on only a few occasions.
A threshold question in an interpretive discussion of the statute is whether significance may be attached to the headnote, "De minimis infractions." As noted earlier, in his moving papers defendant seeks a dismissal of the indictment on the ground that the offense charged is de minimis. However, while that phrase appears in the headnote, it is not found in the language of the statute. The criteria for an order of dismissal are set forth in three subsections and they are specific and *660 detailed. Yet counsel routinely argue, as does this defendant, that a dismissal is warranted as the offense charged constitutes a "de minimis infraction." Furthermore, cases in sister states with similar laws have routinely referred to the "de minimis" phrase in interpreting the statute. While the Legislature has declared that headnotes are not part of the statutes and may not be used to ascertain legislative intent, N.J.S.A. 2C:2-11 is exceptional.
Under ordinary circumstances the headnote is not part of a statute. N.J.S.A. 1:1-6 provides that "[i]n the construction of the Revised Statutes ... no headnote ... shall be deemed to be part of [the law]." Judicial decisions have confirmed that headnotes are not "a permissible guide to legislative intent." In re J.W., 44 N.J. Super. 216 (App.Div. 1957), certif. den. 24 N.J. 465 (1957); State in the Interest of M.S., 129 N.J. Super. 61 (Cty.Ct. 1974), aff'd 139 N.J. Super. 503 (App.Div. 1976), rev'd on other grounds 73 N.J. 239 (1977).
Written directly into the Revised Statutes when adopted in 1937 was the mandate that "the classification and arrangement of the several sections of the Revised Statutes have been made for the purpose of convenience, reference and orderly arrangement," and that "therefore no implication or presumption of a legislative construction is to be drawn therefrom." R.S. 1:1-5; Asbury Park Press v. City of Asbury Park, 19 N.J. 183 (1955). Headnotes are not part of the Revised Statutes. R.S. 1:1-6. [In re J.W., supra, 44 N.J. Super. at 224].
The foundation for N.J.S.A. 1:1-6 and its interpretation is that headnotes are not included in the laws when enacted by the Legislature but are added by others in the course of the classification and incorporation into the annotated statutes. N.J.S.A. 1:1-6 was enacted with the Revised Statutes in 1937. While prior thereto no similar statutory provision existed, case law held as early as 1899 that marginal notes (a common forerunner of headnotes) were not part of the statutes. Howard Savings Institution v. Newark, 63 N.J.L. 65, 69 (Sup.Ct. 1899), rev'd on other grounds 63 N.J.L. 547 (E. & A. 1899); State v. Burrell, 120 N.J.L. 277, 283 (E. & A. 1939). In Burrell the court discussed the word "Burglary" which appeared in heavy faced type as a prelude to the text of a section of the Compiled Statutes of 1910. *661 In finding that the word was not part of the section, the court said:
In the Crimes act, Revision of 1898, Pamph.L. (at p. 830), the word appears in the margin, and there is some similar marginal note attached to every other section in that volume and in every volume of session laws for over a century past. They appear in the various compilations back to Kinsey in 1732. Up to 1828 this was probably a custom, but in that year (Harrison's Compilation 163) the legislature enacted a statute, the second section of which requires the secretary of state to cause "each and every of the public laws to be copied for the press, with proper marginal notes to each section," and by section 5 of the same act the secretary was allowed "for making and preparing marginal notes and index" the sum of fifteen cents per one hundred words. The fifteen cent fee was repealed in 1881 (Pamph.L., p. 26), but the second section has been carried down to date in the various revisions. See Revised Statutes of 1847, page 711, section 2; Revision of 1877, page 1122, Comp.Stat. 1910, p. 4981; Revision of 1937, title 1, chapter 3, section 1, which has a footnote giving a full list of preceding statutes. It seems to be clear, therefore, that the marginal note is simply an editorial addition and is no part of the statute itself; and, indeed, this was expressly held by the late Chief Justice Depue in Howard Savings Institution v. Newark, 63 N.J.L. 65 (at p. 69). [120 N.J.L. at 282-283]
The Legislature has directed the Office of Legislative Services to cause a headnote "descriptive of the contents" to be printed at the beginning of those statutory sections "as it shall deem appropriate." N.J.S.A. 1:3-1. This function is performed as part of the duty of that office to organize, compile and number the statutes preparatory to their printing. N.J.S.A. 1:1-6 was intended to codify the prohibition against consideration of headnotes or other editorial comments not enacted by the Legislature. However, it would distort the legislative intent to conclude that when a headnote is not added in the codification of the law after its enactment but is included in the law as passed it is not a part of the statute. It is appropriate to consider a headnote which was before the members of the Legislature during their debate and vote.
N.J.S.A. 2C:2-11 presents such a case. The phrase "de minimis infractions" was taken from the Model Penal Code and was enacted with the text of the statute. See Senate Bill 738 (1978); L. 1978, c. 95. The purpose of the prohibition of N.J.S.A. 1:1-6 is absent. Therefore, the headnote is part of the statute and a *662 proper matter for consideration in ascertaining the intent of the Legislature.
"De minimis infractions," as used in the headnote to both § 2.12 of the Model Penal Code and N.J.S.A. 2C:2-11, has its origin in the common law maxim "de minimis non curat lex." See State v. Park, 55 Hawaii 610, 525 P.2d 586 (Sup.Ct. 1974), where, in referring to the de minimis statute, the court said:
The disposition of a case, whether civil or criminal, by the application of the maxim "de minimis non curat lex" is an exercise of judicial power, and nothing else. [Citations omitted]. The fact that the maxim is spelled out in statutory form and made specifically applicable in criminal cases does not change the nature of the power. [525 P.2d at 592]
See, also, Commonwealth v. Houck, 233 Pa.Super. 512, 335 A.2d 389 (Super.Ct. 1975), where it was stated that the Pennsylvania de minimis statute "makes applicable to the criminal law the principle `de minimis non curat lex.'" 335 A.2d at 391. This principle is frequently invoked by the courts as justification for a refusal to adjudicate litigation in which relief would be afforded were a more substantial matter involved. Rendered into English, it is that "the law does not concern itself with trifling matters."
Historically, the maxim has been applied only to civil matters, and the instances where it may properly be applied are rare. Lisbon v. Bath, 21 N.H. 319 (Sup.Ct. 1850). A comprehensive treatment of this fundamental principle is found in Annotation, "De minimis non curat lex," 44 A.L.R. 168 (1926). The basis of the maxim is that mere trifles or technicalities must yield to practical common sense and substantial justice. Goulding v. Ferrell, 106 Minn. 44, 117 N.W. 1046 (Sup.Ct. 1908). This philosophy is found in the language of N.J.S.A. 2C:2-11, and the headnote "De minimis infractions" significantly underscores the intent of the Legislature that this be so, but that no broader import be attached to their enactment.
The Senate Judiciary Committee Statement accompanying Senate Bill 738, ultimately enacted as the New Jersey Code of Criminal Justice, mentions the "de minimis" section only briefly *663 and sheds little light on the Legislature's intent. Emphasizing that the statute is directed only to trifling matters, the entire Statement reads:
Chapter 2 also contains a provision whereby an assignment judge may dismiss a prosecution if the facts of a particular case indicate a technical violation of a statute and a conviction would be inappropriate (see 2C:2-11). The judge cannot act under this section unless he first notifies the prosecutor and provides him an opportunity to be heard. No such provision exists under current law.
The documents from which the Legislature worked in drafting the enactment are more helpful. In recognition of the need to revise and modernize the criminal law of New Jersey, the Legislature in 1968 established the Criminal Law Revision Commission. L. 1968, c. 281. In its final report issued in October 1971 the Commission presented its recommendations to the Legislature and included the section entitled "De minimis infractions" with commentary. The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, vol. I, Report and Penal Code at 23; vol. II, Commentary at 74. The statutory language recommended by the Commission is identical to that in the Model Penal Code save one word: "negatived" changed to "negated." In its commentary the Commission indicated that this section "is intended as an additional area of discretion in the administration of the criminal law by way of judicial participation...." Id., vol. II at 75. The Commission further commented on the substantive provisions as follows:
Subsection a requires a dismissal if the defendant's conduct was within a customary license or tolerance not expressly negatived by the victim nor inconsistent with the law. An example would be that of trespassing upon land in an area where it has traditionally been permitted by the owners or picking up a newspaper from a stand when one does not have the money for it intending to pay the next day.
Subsection b is the situation where the conduct literally comes within the Section as drafted but only to an extent which is too trivial to warrant the condemnation of a conviction.
Attributing common sense to the Legislature, it would not have intended the prosecution of every single instance even though there is a technical violation of the statute.
Subsection c applies to a similar situation where there are extraordinary and unanticipated mitigations for the particular conduct. This statute would allow *664 the judiciary to use a rule of reason which, without a legislative recognition of such power, a court might feel that it would be precluded from using by the separation of powers doctrine. As a safeguard and to bring to the surface the reasons for believing that no jury ought to convict in a particular situation, the Court is required to file a statement of its reasons for action taken under this Subsection. [Id. at 74-75]
The Legislature made no changes in the language which is the subject of these comments on subsections (a) and (b). However, several important procedural changes were made from which intent may be inferred. First, authority to dismiss under the statute was granted to the assignment judge rather than to the "court" generally as had been proposed. Second, the Legislature added to subsection (c) the provision that no prosecution can be dismissed thereunder without giving the prosecutor notice and an opportunity to be heard. Finally, and most significantly, the authority of the assignment judge to dismiss under this statute was made discretionary.
Statutes substantially identical to N.J.S.A. 2C:2-11 enacted in the Commonwealth of Pennsylvania and State of Hawaii have received judicial attention. In State v. Park, supra, the Supreme Court of Hawaii considered an appeal by the state from an order of the district court judge dismissing misdemeanor charges punishable by a fine of up to $500 and imprisonment not exceeding six months. The case involved the indictment of a number of candidates for a primary election for failure to file election expense statements within 20 days of the primary election. Most of them had filed statements late, but before the prosecution was commenced. The Supreme Court reversed, holding that the trial judge abused his discretion because he did not have sufficient evidence before him and was "without any indicators to show that each of these offenses was in fact an innocent, technical infraction, not actually causing or threatening any harm or evil sought to be prevented by [the statute], or that the harm or evil caused or threatened or was so [sic] trivial to warrant the condemnation of conviction." 525 P.2d at 592.
This decision is particularly helpful as it is the only one research has disclosed which discusses the factors to be considered *665 by the court in determining whether to exercise his discretion in favor of dismissing the indictment:
We think that before the code's § 236 can be properly applied in a criminal case, all of the relevant facts bearing upon the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge. See People v. Davis, 55 Misc.2d 656, 286 N.Y.S.2d 396 (1967). Such a disclosure would then enable the judge to consider all of the facts on this issue, so that he can intelligently exercise a sound discretion, consistent with the public interest, whether to grant the dismissal of a criminal case, based upon the standards set forth in the Hawaii Penal Code § 236. Some of these factors that should be considered by the judge on this question under the code's § 236(1)(b) should include the following: the background, experience and character of these defendants-appellees which may indicate whether they knew of, or ought to have known, the requirements of HRS § 11-193 (Supp. 1972); the knowledge on the part of these defendants-appellees of the consequences to be incurred by them upon the violation of the statute; the circumstances concerning the late filing of these statements of expenses; the resulting harm or evil, if any, caused or threatened by these infractions; the probable impact of these violations upon the community; the seriousness of the infractions in terms of the punishment, bearing in mind, of course, that the punishment can be suspended in proper cases; the mitigating circumstances, if any, as to each offender; the possible improper motives of the complainant or the prosecutor; and any other data which may reveal the nature and degree of the culpability in the offense committed by each defendant-appellee. [525 P.2d at 591]
The Hawaii Supreme Court on two subsequent occasions considered this statute in cases similar to the one at bar in that they involved the offense of promoting a dangerous drug. In State v. Schofill, 63 Hawaii 77, 621 P.2d 364 (Sup.Ct. 1980), the trial judge dismissed an indictment involving the attempted but unconsummated sale of a quarter ounce of cocaine for $550. In reversing the dismissal the court said:
Neither should the trial court have dismissed the indictment on the ground that the offense charged and the circumstances surrounding the alleged offense constituted a de minimis infraction as defined by [the statute]. [621 P.2d at 370]
After reviewing the statutory language the court concluded by stating that "[t]raffic in narcotics can hardly be said to be a de minimis offense."
In the other case, State v. Vance, 61 Haw. 291, 602 P.2d 933 (Sup.Ct. 1979), two defendants were convicted of promoting dangerous drugs, one for the possession of .7584 gram of white powder containing cocaine and the other for possession of three *666 secobarbital tablets. As in the case at bar, the drugs were found in their possession in the course of a routine incarceration search conducted by the police. In affirming the convictions the Supreme Court commented upon the availability of the de minimis statute to avoid an unduly harsh conviction "for possession of a microscopic trace of dangerous drug." Referring to the interrelationship between the de minimis statute and that prohibiting promoting a dangerous drug the court observed:
We mention in passing, however, that where a literal application of HRS § 712-1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702-236, "De minimis infractions" may be applicable to mitigate this result. HRS § 702-236 provides that the court may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction.
The evil sought to be controlled by the statutes mentioned above is the use of narcotic drugs and their sale or transfer for ultimate use. Where the amount of narcotics possessed is an amount which can be used as a narcotic, the probability of use is very high and the protection of society demands that the possession be proscribed. However, where the amount is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control. Thus, the possession of a microscopic amount in combination with other factors indicating an inability to use or sell the narcotic, may constitute a de minimis infraction within the meaning of HRS § 702-236 and, therefore, warrant dismissal of the charge otherwise sustainable under HRS § 712-1243.
In the cases at bar, the possession of .7584 gram of white powder containing cocaine and the possession of three tablets of secobarbital by the appellants does not call into play the application of HRS § 702-236. We, therefore, affirm the convictions below. [602 P.2d at 944]
A statute substantially identical to N.J.S.A. 2C:2-11 enacted in Pennsylvania has twice undergone judicial scrutiny. In one case the trial judge dismissed a complaint as trivial, and the appellate court affirmed. This is the only reported decision research disclosed supporting an invocation of the statute. In that case, Commonwealth v. Houck, supra, a complaint was filed against defendant alleging harassment by communication. Defendant had been a friend of the complainant for many years. The fidelity of his friend is questionable as he took defendant's *667 wife on a fishing trip and loaned her money to institute divorce proceedings. Defendant was charged with telephoning the complainant and verbally abusing him. Four telephone calls were alleged, one with conversation and the others where no conversation took place. Defendant admitted the conversation and while denying vulgarity stated he told the complainant he was "lower than dirt," "morally rotten" and should be thrown out of the church and the Masons. In affirming the dismissal of the complaint the appellate court described the difficulty in defining an infraction which would justify a dismissal under the statute as "a task of such magnitude as to defy accomplishment." 335 A.2d at 391.
The final reported decision is Commonwealth v. Gatto, 236 Pa.Super. 92, 344 A.2d 566 (Super.Ct. 1975). Defendant appealed a conviction of possession of a prohibited offensive weapon contending the indictment should have been dismissed as a de minimis infraction. The decision of the court is both enlightening and entertaining in the discussion of the appropriate consideration to be given to surrounding circumstances in determining whether the statutory criteria have been fulfilled.
Applying a reasonable construction to the phrase in question, under the circumstances of this case, we can safely conclude that a thirty inch knife serves no common lawful purpose. Had appellant been on a journey through the tropical rain forests of South America, attempting to travel by foot from Bogota, Columbia to Caracas, Venezuela it could then be reasonably concluded that a thirty inch knife had a common lawful purpose; but appellant was in a high crime urban area of Scranton, Pennsylvania at 3:30 in the morning. Under such circumstances we can find no common lawful purpose for a thirty inch knife. [344 A.2d at 568-569]
In the illumination of the authorities which have been reviewed, consideration will now be given to defendant's motion to dismiss the indictment as charging "a de minimis infraction." Defendant urges the applicability of two sections of N.J.S.A. 2C:2-11 in support of his motion. He contends initially that the cocaine found in his possession equals only .02 ounce; that the quantity was minimal and intended only for his personal consumption, and that under the statutory scheme the offense is "too trivial to warrant the condemnation of conviction." N.J. *668 S.A. 2C:2-11(b). In addition, he asserts that his certification filed in support of the motion "presents such other extenuations that [his conduct] cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense." N.J.S.A. 2C:2-11(c).
Defendant's certification, while interesting, asserts facts of marginal import on this motion. The primary focus of the relevant statutory language is upon the offense charged. The certification discusses the circumstances surrounding defendant's earlier conviction for firearms offenses, and administrative discipline imposed upon him by the prison authorities following the occurrence of the events charged in the present indictment.
In summary, his certification establishes that he is 54 years of age and has no history of violent crime. At the time of his incarceration, which continues today, he was the owner and operator of a record shop in New York City. His wife is struggling to maintain the business to which he intends to return upon his release from prison. Prior to his incarceration he was an eye witness to the homicide of a youth in New York City. As a result of his cooperation with law enforcement authorities investigating the crime, his identity as a cooperating witness was publicized in the news media. Information then came to the police that someone had been hired to assassinate him and defendant was so informed. Subsequently, in an apparent attempt to kill defendant, his father was murdered on the premises of the business which they then operated. In fear for his life, he armed himself with weapons which were discovered by policemen during a highway search of his automobile in Ridgefield, New Jersey, on March 5, 1980. That possession resulted in his conviction and present incarceration. While so incarcerated he was found to be in possession of cocaine and administrative discipline was imposed upon him by the prison officials. He was returned to maximum security status, lost 365 days commutation time, and was sentenced to 15 days disciplinary detention and one year segregation from the general prison population.
*669 Measured by the yardstick of the statute, the charge against defendant falls short of the standard for dismissal. Section (b) requires that the court find that defendant's conduct "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction." Possession of cocaine "in a quantity of less than 1 ounce including any adulterants or dilutants" is a high misdemeanor under N.J.S.A. 24:21-20(a)(1), punishable by up to five years imprisonment or a fine of not more than $15,000 or both. In State v. Humphreys, 54 N.J. 406 (1969), the Supreme Court considered a claim by defendant that a quantity of marijuana was too small to justify a conviction. The court held:
So long as qualitatively the substance seized is marijuana, the statute does not prescribe any minimum amount which must be possessed. And it follows that this Court cannot be asked to specify what quantity of a contraband substance is sufficient to invoke criminal sanctions, so long as the presence of the substance is readily determined. [Citations omitted]. Linedrawing among varying quantities of marijuana is unrealistic, since the small quantity readily warrants the inference that the defendant possessed a larger usable amount, and it is the possession of the latter amount which is the ultimate tryable issue in the case. [at 410-411].
This conclusion is supported not only by the decisions of five other states cited in the opinion, but also by the specific findings of the Hawaii Supreme Court on similar claims under the de minimis statute in State v. Vance and State v. Schofill, both supra. Defendant's possession did "actually cause or threaten the harm or evil sought to be prevented by the law." Mere possession of cocaine is a high misdemeanor. Unlawful possession of it in any amount is a serious, not a trivial offense. It is particularly so when as in this case the possession is by a prisoner in a penal institution. Security and safety considerations in a prison atmosphere magnify the significance of the statutory violation.
Section (c) requires that the court find that defendant's conduct "presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding *670 the offense." The facts posited by defendant as constituting statutory extenuations are not of the nature required for invocation of the discretion the Legislature has granted the assignment judges to dismiss prosecutions. They relate only to the circumstances which resulted in his imprisonment and were unquestionably considered by the sentencing judge in rendering the judgment of conviction. Sympathetic considerations play no part in a determination under N.J.S.A. 2C:2-11. While defendant's paranoia resulting in his possession of firearms may be understandable, it does not extenuate his possession of cocaine. The same is true of his personal background and the difficulties being encountered in his family and business affairs by reason of his incarceration. Defendant's allegations are relevant to the issue of the penalty to be imposed upon conviction but do not justify a dismissal of the indictment.
There appears in the indictment and the facts presented by defendant no statutory justification for the assignment judge to substitute his judgment for that of the prosecutor who determined to present the case and the grand jury who determined to indict. The Legislature has carefully dictated the standards for an order of dismissal, and this case meets none of them. Under the statute cases such as this are to be prosecuted, not dismissed. Accordingly, the motion is denied.
Before concluding, a further observation may be appropriate. Motions to dismiss indictments under the authority of N.J.S.A. 2C:2-11 have been filed with increasing frequency since the publication of State v. Hegyi, 185 N.J. Super. 229 (Law Div. 1982). In that case the assignment judge concluded that the statute "has brought summary judgment procedures to the criminal law." Defendant's motion in the case at bar does not give rise to this issue. He has sought, not a summary judgment, but a dismissal on the ground that the offense charged is a trivial one when considered in the light of the attendant circumstances. However, in view of the interest of the criminal bar generated by the Hegyi decision, the contrary view which this court has expressed in other cases will be stated here.
*671 This statute authorizes a review by the assignment judge of the factual allegations of the charge presented by the complaint or indictment, and if he finds they meet the statutory requirements, he may exercise his discretion and enter an order of dismissal. The statute does not purport to advance the stage of the criminal process where a defendant can establish his innocence. While our criminal procedure recognizes a motion to dismiss an indictment which fails to charge an offense, R. 3:10-3, a defendant may not move against it on the basis of his own evidence prior to trial. In presenting a motion pursuant to N.J.S.A. 2C:2-11, a defendant must accept as true for the purpose thereof the allegations of the charge against him. On that premise he may assert that this conduct, which technically establishes the commission of a crime by him, was a trivial matter or did not cause or threaten the result which the criminal statute is designed to prevent. If the assignment judge finds that defendant's conduct so "charged to constitute an offense," when considered in that light, falls within a statutory criterion, he may dismiss the indictment. That the statute is permissive rather than mandatory, which would be required if a summary judgment procedure were contemplated, is demonstrated by the use of the word "may" in describing the authority of the assignment judge.
The right of a defendant to move against the indictment on the ground of insufficiency of evidence before the grand jury has long been recognized. State v. Dayton, 23 N.J.L. 49 (Sup.Ct. 1850). The test is whether the evidence received by the grand jury rationally established the facts of the charge stated in the indictment. State v. Weleck, 10 N.J. 355 (1952). N.J.S.A. 2C:2-11 does not alter this test. The statute is entitled, "De minimis infractions," and the language of the statute, the commentaries of the Commission and interpretations given similar statutes in other states establish a singular intent that the statute address the issue of trivial offenses or absurd applications.
*672 State v. Hegyi, supra, holds that a defendant may move for summary judgment, presumably on the basis of evidence of innocence presented by him. The opinion gives as an example:
X is charged with murder. The facts indicate that the crime was committed by Y; no facts connect the crime to X. The summary judgment procedure, requiring an examination of the facts is available.... [185 N.J. Super. at 233]
In that hypothetical case, if the evidence before the grand jury failed to establish a prima facie case of guilt of X, the indictment is subject to dismissal under the traditional concept without resort to N.J.S.A. 2C:2-11. The defendant's existing right is superior to a right to move for summary judgment, for the State may not further support the prosecution's case by producing additional evidence. The constitutional right to indictment forbids it. On the other hand, if the evidence before the grand jury did establish a prima facie case of guilt, the State could rely on that evidence alone to defeat a motion for summary judgment. Only if the State wishes to accept a version contrary to that presented to the grand jury may the indictment be dismissed, and then only on motion by the prosecutor. R. 3:25-1.
The conclusion in State v. Hegyi, supra, that the statute authorizes a criminal summary judgment procedure is premised in part on a reading of the statute as requiring that "the prosecution must be dismissed" if the criteria are met. Id. at 232. The statutory language, however, is to the contrary. The statute provides that the "assignment judge may dismiss a prosecution...." (Emphasis added). The conclusion in Hegyi is drawn from a quoted portion of the Commentary to the Report of the New Jersey Criminal Law Revision Commission, supra, which reads, "It should be noted that the Code uses the word `shall' meaning that if the Court makes the requisite findings, it must dismiss." The Commentary, however, refers not to the New Jersey Code of Criminal Justice but to the Model Penal Code. While the Model Penal Code states "shall," the New Jersey statute uses "may." This change in the enactment of our Legislature emphasizes the intent that the authority granted be discretionary. A discretion to grant or deny is the *673 antithesis of the function of a judge in deciding a motion for summary judgment.
Further evidence of the intent of the Legislature that the authority granted be discretionary is found in the Commentary:
In criminal law enforcement many agencies exercise discretion as to the appropriateness of prosecution in a particular case. The police constantly must make decisions as to whether to arrest or, after arrest, whether to proceed with the case. Thereafter, both the prosecutor and the Grand Jury are charged with the obligation of determining both the sufficiency of the evidence to proceed and the appropriateness of doing so. Further, at least as to the Municipal Courts, experience has shown that judges will, on occasion, enter a finding of not guilty even in the face of proven guilt because, under the circumstances, a conviction is considered to be inappropriate.
The drafters of the MPC [Model Penal Code] summarize all of this as a "kind of unarticulated authority to mitigate the general provisions of the criminal law to prevent absurd applications." [Id., vol. II at 74]
It should be made clear that this Section is intended as an additional area of discretion in the administration of the criminal law by way of judicial participation and not as a replacement for the traditional exercise of discretion by the prosecutor, the grand jury and the police. The Section should not be used by those agencies as an excuse for buck-passing. [Id., vol. II at 75]
Logic dictates that had the Legislature intended so dramatic a change in the long-standing criminal procedure as the right to move for summary judgment, that intent would have been stated. There is certainly no reference to such an intent in the headnote "De minimis infractions," nor in the Commentary of the report filed by the Commission which prepared the recommendation that the section be enacted. Since no other state which has adopted this section of the Model Penal Code has interpreted it to provide such a procedural right, the intent by our Legislature to do so surely warrants at least a brief comment in the Commission report. Indeed, it does not strain reason to conclude that the Legislature changed the word "shall" in the Model Penal Code to "may," thus eliminating any doubt that discretion was intended, to insure the constitutionality of the statute. See N.J. Const. (1947), Art. VI, § II, par. 3; Winberry v. Salisbury, 5 N.J. Super. 30 (App.Div. 1949), aff'd 5 N.J. 240 (1950). "Our [court] rules do not invade the legislative *674 field and the Legislature does not invade or deny the power of the Supreme Court to make rules setting the practice and procedure of the courts." McChesney v. McChesney, 91 N.J. Super. 523, 525-526 (Ch.Div. 1966).
For a summary judgment procedure to be utilized it is necessary that a defendant be permitted to produce evidence relating to the offense. The statute appears to forbid this, for it authorizes the assignment judge to consider the "conduct charged ... and the nature of the attendant circumstances." (Emphasis supplied). Nowhere does the statute permit a defendant to assert a version contrary to the conduct charged in the complaint or indictment. In listing examples of factors for the court's consideration the Hawaii court in State v. Park, supra, did not include the question of defendant's guilt or innocence. 525 P.2d at 591.
The Commentary to the Commission report fully describes the introduction of an innovative concept into the criminal law  one designed to prevent absurd applications. It gives as examples "trespassing upon land in an area where it has traditionally been permitted by the owners, or picking up a newspaper from a stand when one does not have the money for it intending to pay the next day." Other language in the report includes the statement, "attributing common sense to the legislature, it would not have intended the prosecution of every single instance even though there is a technical violation of the statute." Basically, the concept of triviality or absurdity of a prosecution appears to be the touchstone for dismissal.
The statute is directed to a discretionary right in the interest of basic justice to abort appropriate prosecutions which would technically warrant conviction. It does not authorize the assignment judge to determine that, as a matter of law, a defendant is innocent on the basis of evidence other than that heard by the grand jury.