JOHNSON, Justice,
concurring and dissenting.
Two separate appeals have been brought by Joseph F. O’Kicki. The first appeal is from the judgment of sentence entered June 27,1990, and docketed at No. 1113 Pittsburgh, 1990. The second appeal is from an order entered August 30, 1990, and docketed at No. 1554 Pittsburgh, 1990. I join *551 in so much of my colleagues’ action as would affirm the terms of concurrent incarceration and the imposition of cumulative fines upon guilty verdicts on Counts I, III, IV, VI, VII, and VIII.
I would reverse so much of the judgment of sentence as purports to direct restitution “to the Commonwealth for all wages received by you since the date of your suspension from the judicial office.” Sentencing Hearing Transcript, June 27, 1990, page 48.
In addition, I would reverse the entire order entered August 30, 1990 which purports to assess costs and restitution due the Commonwealth as being without authorization in law. I, therefore, must concur and dissent.
O’Kicki was tried between October 30, 1989, when jury selection began, and December 16, 1989 when the verdict was returned. Post-trial motions were filed in December 1989. A hearing was held late that month on O’Kicki’s allegation of a lack of unanimity of the verdict. By opinions and orders entered during March and June 1990, all post-trial motions were denied.
A complete sentencing hearing was held on June 27, 1990. O’Kicki was sentenced to undergo imprisonment of two to five years and to pay fines totalling $57,500. From this judgment of sentence, O’Kicki perfected an appeal on July 16, 1990 following the denial of his motion to modify sentence.
The Commonwealth provides no convincing support for its having proceeded to a hearing on its own costs almost sixty days after the imposition of sentence and more than one month after the appeal from judgment of sentence had been perfected. Strangely, it cites to the Pennsylvania Rules of Appellate Procedure as the source of the jurisdiction for the hearing held August 20, 1990. In attempting to find support in Pa.R.A.P. 1701(b)(1), the Commonwealth argues:
As a result, when the court held the costs hearing on August 20, 1990, it was merely, “taking such action as *552 was necessary to preserve the status quo.” The court was merely assigning a dollar amount to the costs imposed on O’Kicki. The court was not moving forward or “proceeding further” with the case at bar. Rather, it was merely filling in a blank which was intentionally left by the court on June 27, 1990.
Brief for Appellee (1554 Pittsburgh 1990), pages 13-14. As of June 27, 1990, O’Kicki had been fined a cumulative sum of $57,500. As a direct result of the hearing held August 20, 1990, the August 30th order was entered which increased O’Kicki’s liability by the sum of $104,158.62 for Commonwealth costs and expenses and an additional $144,-909.75 by way of ordered restitution. For the Commonwealth to argue that this imposition of nearly a quarter million dollars of increased liability was nothing more than “preserving the status quo” or “merely filling in a blank” borders on the insulting.
Neither party has referred to 42 Pa.C.S. § 5505 which limits the time within which a trial court may modify or rescind an order to thirty days after entry, where no appeal has been taken. Here, we have an appeal from judgment of sentence which was taken in a timely fashion on July 16, 1990. The trial court has not filed any opinion or memorandum in support of its order of August 30, 1990. While the mathematics of the order may seem to be self-explanatory, there is no explanation as to how the trial court considered, and resolved, the numerous objections advanced by counsel for O’Kicki throughout the August 20th hearing. See Pa. R.A.P. 1925(a).
I would conclude that the sentencing court lost its jurisdiction to proceed further on costs or restitution on July 16, 1990 when an appeal was taken from the sentencing order, or on July 27, 1990 at the very latest. A trial court lacks jurisdiction to modify a sentence after the expiration of the thirty-day restriction imposed by 42 Pa.C.S. § 5505, and any attempt to modify the sentence thereafter is a nullity. Commonwealth v. Lynch, 304 Pa.Super. 248, 251, 450 A.2d 664, 666 (1982); Commonwealth v. Canady, 297 Pa.Super. *553 292, 296-97, 443 A.2d 843, 845 (1982); accord Municipal Council of Monroeville v. Kluko, 102 Pa.Cmwlth.Ct. 49, 52-54, 517 A.2d 223, 225 (1986).
Moreover, I believe that a separate but equally controlling reason exists for the reversal of the August 30th order. Costs must not be assessed except as authorized by law. Commonwealth v. Gill, 288 Pa.Super. 538, 544, 432 A.2d 1001, 1004 (1981). The burden of justifying, by a preponderance of the evidence, costs imposed upon a defendant rests upon the Commonwealth. Id. In this prosecution, the Commonwealth has fallen far short of either arguing or producing statutory support for reimbursement for the expenses here at issue.
The Commonwealth argues that “[sjinee the Commonwealth was represented by the Office of the Attorney General with all the powers and subject to all the liabilities of district attorneys, the court properly assessed costs against O’Kicki.” Brief for Appellee (1554 Pittsburgh 1990), Summary of Argument, page 10. I must vigorously disagree.
During the hearing on the assessment of costs and restitution held August 20, 1990, Deputy Attorney General Lawrence N. Claus alluded, more than once, to the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164, §§ 101 to 506, 71 P.S. §§ 732-101 to 732-506, seemingly to support his belief that statutory authorization existed for the proceeding then underway. The following exchange occurred during closing argument following the costs assessment proceedings:
ATTORNEY CLAUS: Your Honor, the only thing that is different in this case is the attorney is the Attorney General. That is not a distinction of substance, especially since the Commonwealth Attorneys Act and the rules of court that have been specifically promulgated to say that in any statute or any ruling where it speaks of a D.A., it also means attorney for Commonwealth, which also means the Office of Attorney General.
THE COURT: And that statute is 16 P.S. —?
*554 ATTORNEY CLAUS: 1403, Your Honor.
THE COURT: 1403. Okay.
ATTORNEY CLAUS: That’s right. And we’re talking about costs of prosecution. Your Honor, both the Commonwealth Attorneys Act and the Judicial Code with the Grand Jury Act envision that a county not be required to bear the costs of a case just like this.
Hearing on Costs, Excerpt of Proceedings, August 20,1990, filed August 27, 1990, pages 6-7. Nowhere in the Excerpt of Proceedings (14 pages), or in the Proceedings of the same date filed November 15, 1990 (137 pages), does the Commonwealth declare exactly which section or sections of the Commonwealth Attorneys Act are relevant, or controlling, on the issues on this prosecution.
In its Brief for Appellee (1554 Pittsburgh 1990), the only reference to the Commonwealth Attorneys Act is to § 205 of the Act, 71 P.S. § 732-205, appearing at pages 19-20 of the Brief. To the extent that the Commonwealth urges subsections (a) and (b), there is no disagreement since the authority of the Attorney General to prosecute O’Kicki is not disputed. However, the Commonwealth’s attempt to rely on subsection (d) to support its attempted reimbursement of costs is clearly misplaced. Not only has the representative of the Commonwealth misinterpreted the first portion of the subsection, relating to the powers of special deputies, but it has failed to disclose to this tribunal the concluding sentence in the subsection which is directly adverse to the position of the Commonwealth and not disclosed in O’Kicki’s brief. See Rules of Professional Conduct, Rule 3.3(a)(3).
In pertinent part, § 205 of the Act provides:
§ 732-205. Criminal prosecutions
(d) Powers when prosecuting. — Whenever the Attorney General prosecutes a criminal action, or appeal, he [sic] may employ such special deputies as are necessary for that purpose; such deputies shall take the oath of *555 office and be clothed with all the powers, and subject to all the liabilities imposed by law upon district attorneys, including the power to sign informations or indictments. Whenever the Attorney General intervenes in a criminal action, the costs incurred as a result of the intervention shall be paid by the Commonwealth.
71 P.S. § 732-205(d) (emphasis added).
Both of the sentences appearing in § 205(d) are very clear. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). The first sentence in the section does nothing more than vest in special deputies the same powers and obligations of district attorneys when those special deputies have been employed by the Attorney General in a criminal prosecution. It does not, as the Attorney General seeks to argue in his Brief, at page 20, vest in the Attorney General the entitlement to recover the costs of prosecution and investigation.
On the contrary, the subsection makes it absolutely clear that it is the Commonwealth that shall be responsible for any and all costs incurred as a result of the Attorney General’s intervention. The subsection is silent as to regular costs and cannot be read as implying anything whatsoever concerning those costs. I must conclude, therefore, that the Attorney General must look elsewhere than in the Commonwealth Attorneys Act if the costs sought to be imposed upon O’Kicki following the August 20th hearing are to be justified.
The prosecution of O’Kicki had its genesis in Presentment No. 9 of the Sixth Statewide Investigating Grand Jury, returned February 17, 1989. A statewide investigating grand jury is encompassed under, and included in, the statutory term, “multicounty investigating grand jury.” 42 Pa.C.S. § 4542. Definitions.
In 1984, the legislature passed and the Governor signed two nearly identical amendments to that portion of Act 142 of 1980 which had added Subchapter D to Chapter 45 of *556 Title 42, the Investigating Grand Jury Act, 42 Pa.C.S. §§ 4541-4553. As amended, § 4553 now provides:
§ 4553. Expenses of investigating grand juries and trials resulting therefrom
(a) County. — ----
(b) Multicounty. — The expenses of any multicounty investigating grand jury shall be borne by the Commonwealth. In addition, the costs and expenses resulting from any trial of a person against whom a presentment has been issued by a multicounty investigating grand jury shall be borne by the Commonwealth. Costs and expenses under this subsection include, but are not limited to, all reasonable costs incurred by the county for the services of the courts, the trial jury, the sheriff, the clerk of courts, the county prison, the district attorney and any public defender appointed by the court, and related costs and expenses incurred by the county in the course of the trial. Counties shall be reimbursed from the General Fund of the Commonwealth upon application to the State Treasurer through the Office of Attorney General pursuant to procedures prescribed by that office.
42 Pa.C.S. § 4553 (emphasis added). The plain language of the 1984 amendment(s) to the Investigating Grand Jury Act makes it clear that the Commonwealth must pay all expenses arising from the O’Kicki trial, for the very simple reason that the trial stemmed from the presentment of the multicounty investigating grand jury.
The Commonwealth has as much as conceded this, since it did not file its Petition for Assessment of Costs of Prosecution (filed June 19, 1990) until after having reimbursed Cambria County for all of its costs — at that time — arising from the O’Kicki trial. See Petition for Assessment etc., Exhibit No. 2, (authorizing memorandum for payment of $42,532.08 to Cambria County). The testimony of Albert M. Penska, Jr. that the county had been reimbursed for all of its costs is undisputed. Hearing on Costs, August 20, 1990, pages 36-37.
*557 On this appeal, Cambria County is not seeking to recover any of its expenses in connection with the prosecution of O’Kicki. It has already been paid in full, pursuant to the Act.
What we are faced with on this appeal is the Commonwealth’s attempt, for the first time, and without support in the case law, to avoid the legislature’s unambiguous declaration of policy that all expenses resulting from O’Kicki’s trial be borne by the Commonwealth. 42 Pa.C.S. § 4553(b), supra.
In its formal Petition for Assessment of Costs of Prosecution filed June 19, 1990, and again in its Supplemental Petition for Assessment of Costs of Prosecution and Establishment of Restitution filed August 15, 1990, the Attorney General cites only to 42 Pa.C.S. § 1726 and 16 P.S. § 1403 as its authority to request the trial court to impose these costs on the defendant. 42 Pa.C.S. § 1726 does nothing more than vest in the Supreme Court, as governing authority {see 42 Pa.C.S. § 102, Definitions), the power to prescribe by general rule the standards governing the imposition and taxation of costs. The costs referred to in § 1726 are those to be collected from the public, and not official expense reimbursement. Predictably, there is no reference to § 1726 in the Attorney General’s briefs.
As to 16 P.S. § 1403, I find no support for the position of the Attorney General in that section. It provides, in its entirety:
§ 1403. Expenses incurred by District Attorney
All necessary expenses incurred by the district attorney or his assistants or any officer directed by him in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime, upon approval thereof by the district attorney and the court, shall be paid by the county from the general fund of the county. In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney *558 in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant.
16 P.S. § 1403.
Under the first sentence of § 1403, Cambria County has already paid the district attorney’s expenses and has been reimbursed by the Commonwealth. The second sentence of the section, purporting to require the payment by the defendant, is clearly overridden by the 1984 amendment to the Investigating Grand Jury Act, supra. The requirement that the Commonwealth bear the expenses resulting from any trial of a person against whom a multicounty investigating grand jury presentment has been issued (as found in 42 Pa.C.S. § 4553) is irreconcilable with the requirement that the defendant pay the costs of the district attorney (as found in 16 P.S. § 1403). The 1984 amendment to § 4553 expressly includes “all reasonable costs incurred by ... the district attorney.” § 4553 as amended in 1984 is later in date to 16 P.S. § 1403, the County Code, Act of August 9, 1955, P.L. 323, § 1403. Therefore, the statute later in date of final enactment, that is, 42 Pa.C.S. § 4553 must prevail. 1 Pa.C.S. § 1936.
At the cost hearing on August 20, 1990, the Attorney General presented the testimony of four county officers and one other county employee for the purpose of proving the Commonwealth’s costs and expenses. The Controller, the Treasurer, the Clerk of Courts and the Sheriff all testified, as did a clerk in the Clerk of Courts’ office responsible for keeping track of jury selection. However, O’Kicki has not challenged the accuracy of the dollar amounts claimed. His position, with which I agree, is simply that no statute exists providing for the recovery of costs by the State Police or the Office of the Attorney General.
In his August 30, 1990 order, the Honorable Richard D. Grifo ordered O’Kicki to pay $84,338.05 to the Office of the Attorney General. This amount reflected:
Preliminary Hearing and Trial $14,645.73
Cost of Trial Transcript Copy 8,664.00
Grand Jury Witness Expenses 7,010.65
Reimbursement to Cambria County 54,017.67
*559 Judge Grifo also ordered O’Kicki to pay $19,820.57 to the State Police through the Cambria County Clerk of Courts. This total sum represented expenditures, subsistence and overtime for two State Police troopers.
All of these costs and expenses are either expressly set forth or included by implication in 42 Pa.C.S. § 4553(b) and are to be borne by the Commonwealth, since all of them result from the trial of a person against whom a multicounty investigating grand jury presentment had been made. No statutory authority exists to shift these costs and expenses away from the Commonwealth and on to a hapless defendant.
I would find that the court was without jurisdiction to impose further costs on August 30, 1990. 42 Pa.C.S. § 5505. Commonwealth v. Lynch, supra, Commonwealth v. Canady, supra. Independent of that finding, I can find no authority to permit the Commonwealth to avoid its obligation to bear the expenses of this trial which stemmed from a multicounty investigating grand jury presentment as mandated by 42 Pa.C.S. § 4553(b). Commonwealth v. Gill, supra; Commonwealth v. Houck, 233 Pa.Super. 512, 335 A.2d 389 (1975). I therefore do not reach, or consider, O’Kicki’s third issue at No. 1554 Pittsburgh 1990, raising substantive questions relating to the necessity and reasonableness of some of the expenses, the amounts properly attributable to counts upon which O’Kicki was convicted, and the manner of calculation of the costs.
Turning to those portions of the two orders on appeal which direct O’Kicki to make restitution, I must again depart from the position of my distinguished colleagues. The Commonwealth correctly points out that a case remains pending before our Supreme Court which addresses one of the very issues on this appeal: Whether government agencies can be included within the definition of “victim” under the restitution statute found in the Crimes Code, 18 Pa.C,S. § 1106(h). The history of that case, Commonwealth v. Mourar, 522 Pa. 574, 559 A.2d 36 (1989, Table), (56 Eastern District 1989, argued December 11, 1989), is set forth by the *560 Commonwealth in its brief, page 29 n. 6 and will not be repeated here.
Restitution can only be ordered as provided by statute. The statutory authority for imposing restitution as a direct sentence is found in 42 Pa.C.S. § 9721(c) and 18 Pa.C.S. § 1106. The former provides:
§ 9721. Sentencing generally
(c) Restituion. — In addition to the alternatives set forth in subsection (a) of this section the court may order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained.
The latter, in pertinent part, provides:
§ 1106. Restitution for injuries to person or property
(a) General rule. — Upon conviction for any crime wherein property has been stolen, coverted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may.be sentenced to make restitution in addition to the punishment prescribed therefor.
(h) Definitions. — As used in this section the following words and phrases shall have the meanings given to them in this subsection:
“Restitution.” The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.
“Victim.” Any person, except an offender, who suffered injuries to his person or property as a direct result of the crime.
O’Kicki was convicted of Official Oppression (Count I), Bribery (Count III), Demanding Property to Secure Employment (Count IV), Bribery (Counts VI and VII), and Criminal Coercion (Count VIII). While O’Kicki might arguably be liable for restitution to George Koban in the sum of $500, *561 related to Counts III and IV, that is not before us on this appeal. The trial court, at the behest of the Commonwealth, ordered O’Kicki to make restitution of $144,909.75 in its order entered August 30,1990. That sum represented O’Kicki’s accrued salary from October 11, 1988 (the date of suspension from judicial duties) through June 27, 1990 (the date of sentencing) and from June 27, 1990 through August 4, 1990 (most recent monthly payroll for common pleas court judges prior to August 20th hearing).
Under the general rule set forth in § 1106(a), supra, restitution is authorized only in convictions “wherein property has been stolen, coverted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime.” The Attorney General seeks to argue in his brief (No. 1113 Pittsburgh 1990), pages 65-66, without citation to any authority, that O’Kicki’s salary was “unlawfully obtained”. The Attorney General contends:
O’Kicki was suspended after he was notified that he was a target of the grand jury’s investigation. The suspension continued after charges were filed and during his prosecution for several charges all stemming from his abuse of his office as judge of the Court of Common Pleas for Cambria County. Therefore, his entire salary was obtained unlawfully and should be returned. O’Kicki was being paid while not performing his duties. Therefore, he obtained the salary unlawfully. As a matter of justice, the Commonwealth must be reimbursed for this money.
Brief for Appellee (No. 1113 Pittsburgh 1990), pages 65-66. The same argument is repeated, verbatim, in Brief for Appellee (No. 1554 Pittsburgh 1990), pages 28-29.
I know of no statute or caselaw which makes the receipt of one’s paycheck a crime where the entity issuing the warrant for payment is fully apprised of the facts of suspension from duties and nevertheless issues the warrant. More fundamentally, the Attorney General must concede that the salary which O’Kicki received was neither stolen by him nor converted. I reject the suggestion that *562 the sums sought to be recovered here are within the intent of the general rule set forth in § 1106(a). See Commonwealth v. Mourar, 349 Pa.Super. 583, 606-609, 504 A.2d 197, 209-211 (Johnson, J., dissenting).
Moreover, we have held that restitution is permissible only as to losses flowing from the conduct for which the defendant has been held criminally accountable. Commonwealth v. Cooper, 319 Pa.Super. 351, 356, 466 A.2d 195, 197 (1983). This is because due process of law is denied when the losses for which restitution has been imposed did not arise from the very offense for which the defendant was convicted. There are entirely too many instances where employees — both in the public and private sector — receive salaries during periods of suspension for this writer to join with the Office of the Attorney General in its conclusion that salary received during a period of suspension becomes money “unlawfully obtained” under the restitution general rule simply because the employee has been excluded from performing duties on the direction of the governing authority.
Because I would conclude that the property for which restitution was ordered — in this case, salaries paid during a period of suspension — does not fit the general rule set forth in § 1106(a), I would find it unnecessary to proceed to a determination of whether the Commonwealth is, as the Attorney General contends, a “victim” as defined in § 1106(h). Also, because I find restitution to be wholly unauthorized on these facts, I do not consider whether the order of restitution in the amount of $144,909.75 is supported on the record. Commonwealth v. Torres, 396 Pa.Super. 573, 579 A.2d 398 (1990); Commonwealth v. Reed, 374 Pa.Super. 510, 543 A.2d 587 (1988).
Finally, I would note that our Supreme Court has recently denied a Petition to Implement Automatic Forfeiture of Judicial Office brought against the defendant in this case. In re: Judge Joseph F O’Kicki, No. 153 J.I.R.B. Dkt., April 29, 1991. (Order suspending respondent without pay pending disposition of appeals; forfeiture of judicial office to *563 take effect automatically but not before exhaustion of appeal rights). Until the entry of the order at No. 153 J.I.R.B. Docket, O’Kicki continued to receive his salary with the knowledge of the governing authority. And it was the governing authority, and only the governing authority, that had the power to suspend O’Kicki from his duties, with or without pay. Pennsylvania Constitution, art. 5, § 18(g) and (h).
For all of the above reasons, I respectfully concur as to the imposition of incarceration and cumulative fines, and I dissent as to the attempted imposition of costs to be paid to the Office of the Attorney General and to the State Police. I would reverse both orders as to the attempt to order restitution to the Commonwealth and must therefore dissent to so much of my colleagues’ opinion as finds that portion of the orders to be proper.